**R. E. BAXTER et al., Plaintiffs-Appellants,**

v.

**RAILWAY EXPRESS AGENCY, INCORPORATED, a/k/a REA Express, et al., Defendants-Appellees.**

No. 71-1282.

United States Court of Appeals,
Sixth Circuit.

Feb. 18, 1972.

John T. Collins, Buffalo, N. Y., Richard I. Klein, Cleveland, Ohio, on brief, for appellants.

William G. Mahoney, Washington, D. C., Harold A. Ross, Cleveland, Ohio, James L. Highsaw, Jr., Washington, D. C., on brief, for appellees.

Before PHILLIPS, Chief Circuit Judge, PECK, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Plaintiffs-Appellants, Baxter, et al., had been employees of the defendant-appellee, Railway Express Agency, now known as REA Express (REA–Exp.), at Cleveland, Ohio. They were members of Local Lodge 2100 of defendant-appellee Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC or the Brotherhood). Defendant-appellee

H. H. Phillips, at the times here involved was General Chairman of the Brotherhood within the Ohio Valley and Eastern Lake District. This appeal is from dismissal of plaintiffs' complaint and the entry of summary judgment for defendants, made upon motion therefor of the Brotherhood and its General Chairman, Phillips.

We affirm.

On July 8, 1969, REA Exp. notified the Brotherhood's General Chairman of its intention to reroute its so-called transfer traffic through Cincinnati instead of Cleveland as it had been doing for some time. The notice advised that such action was made necessary, in part, because the physical plant of REA Express at Cleveland had been condemned by the City of Cleveland and was to be demolished. The letter of notice advised:

"With no adequate facility being available in the Cleveland area, and the drastic decrease in volume, we contemplate re-routing of traffic, with Cincinnati handling all traffic originating at or destined to offices within State of Ohio. This change will take effect over weekend of July 27, 1969, with full scale operations commencing July 28 at Cincinnati, Ohio."

Plaintiffs, some 246 individuals aver that their employment with REA was terminated in the carrying out of the above program. Their asserted cause of action was bottomed upon a claim that under the terms of the contract between the Brotherhood and REA Exp. they had the right to apply for transfer to and restoration of employment at Cincinnati when the Cleveland operation was terminated. This contract, in its Rule 12, provides in part:

"RULE 12 TRANSFERS AND CONSOLIDATIONS

"(a) This Agreement recognizes that two or more offices or departments may be consolidated and/or positions of work involving a position may be transferred from one seniority district to another after conference and agreement between the Management and the duly accredited representatives of the employees. In the event of failure to make an agreement within sixty (60) days after notice is given to the General Chairman or General Chairman representing the employees to be affected by the contemplated change, the matter may be referred by either party to final and binding resolution in accordance with Sections 3 and/or 7 of the Railway Labor Act as amended. The issues submitted for such determination shall not include any question as to the right of the Company to make the change but shall be confined to the manner of implementing the contemplated change.

"(b) Employees may follow their positions or work when same is transferred from one seniority district to another. The incumbents will have prior rights to the positions to be transferred, if they elect to accompany same. Those electing not to follow their positions and work may exercise their seniority rights and their positions will be bulletined first in the seniority district from which they are to be transferred, and if necessary, second in the seniority district to which they are to be transferred. Seniority of employees transferring under such circumstances shall be transferred to the District to which they are transferred."

Such complaint further charged:

"14. That the defendants herein refused to comply with Rule 12 and entered into a discriminatory and fraudulent agreement wherein plaintiffs were not allowed to follow their work to the other seniority districts."

Defendant BRAC and its General Chairman, Phillips, responded to the complaint by filing a motion "to dismiss the complaint, or in the alternative, for summary judgment." This motion was supported by the affidavit of defendant Phillips which contained averments:

a) That it had long been contended by REA that conduct such as its then

contemplated "rerouting of traffic" through Cincinnati instead of through Cleveland was not a consolidation of "two or more offices or departments * * * or positions of work" within the meaning of Rule 12(a), and that such was the REA's position as to the rerouting then in contemplation.

b) That after notice of REA's aforesaid plan of rerouting was received, Phillips, as General Chairman of the Brotherhood, advised the Chairman of the Protective Committee of Local Lodge 2100 of the BRAC, of which plaintiffs were members, of REA's contemplated action; that thereafter on Sunday, July 27, 1969, he, at the invitation of the aforesaid Chairman of the Protective Committee, attending a meeting of the membership of Local Lodge 2100.

c) That he advised those present of the long maintained position of REA that Rule 12 was not applicable to its then planned rerouting of its traffic to Cincinnati; that the Chairman of the Protective Committee of the Cleveland Lodge asserted his view that Rule 12 did apply and that the Chairman of the Protective Committee of the Cincinnati Lodge took an opposite position.

d) That he advised the meeting that if any of the individual employees desired to attempt to transfer to Cincinnati under a claim that Rule 12 entitled them to transfer, they should file a claim or grievance with their Local Lodge 2100 in accordance with the established rules and procedures of the Protective Laws of BRAC and that such claim or grievance could then be prosecuted in accordance with those laws; and that he further advised the meeting of the members that if any employee was in disagreement with the views expressed by affiant, the Brotherhood governing laws gave the employee full right to appeal such views to the International Vice President for Railway Express, Mr. D. J. Sullivan, to the International President of the BRAC, Mr. C. L. Dennis,

and finally to the BRAC Executive Council in accordance with the governing laws of BRAC; and that he finally "advised the membership meeting that he had reached no agreement with REA Express concerning the contemplated change with respect to the handling of the 'transfer' traffic which then moved through Cleveland which would prevent any employee who felt aggrieved by the carrier's action from progressing a grievance in accordance with the provisions of BRAC governing laws and the collective bargaining agreement concerning the interpretation and application of the agreement as applied to the situation at hand."

e) "That to the best of the knowledge and belief of affiant, no employee of REA Express in the Cleveland area, including the plaintiffs in the above-entitled case, ever filed a grievance or claim with the Protective Committee of their local lodge taking the position that the provisions of Rule 12 should be applied to the carrier's action with respect to the change of the 'transfer' point of certain of its traffic from Cleveland to Cincinnati; that no such grievance was ever transmitted to affiant for handling."

f) "That BRAC and REA Express, acting pursuant to the provisions of Section 3, Second, of the Railway Labor Act (45 U.S.C.A., Sec. 153, Second), have established Special Board of Adjustment No. 752 with Dr. Jacob Seidenberg as Neutral Referee to hear and determine the employee grievances and disputes concerning the interpretation and application of the collective bargaining agreement between BRAC and REA Express and to render final and binding determinations with respect thereto in accordance with the requirements of the Railway Labor Act after these grievances and disputes have been processed on the property of REA Express in accordance with the provisions of the collective bargaining agreement and the governing laws of BRAC."

g) "That to the best of the knowledge and belief of affiant, the employment of none of the plaintiffs has been terminated by REA Express with the exception of Mr. I. C. Pollard, who was dismissed on or about October 29, 1969, for failure to comply with the provisions of the collective bargaining agreement; that the records of BRAC indicate that some of the plaintiffs have voluntarily left the service of the carrier; that these records also indicate that some of the plaintiffs did not work during various months since August 1, 1969, as a consequence of illness; that these records also indicate that certain of these plaintiffs were on furlough by REA Express during one or more months since August 1, 1969; that under the provisions of the collective bargaining agreement attached as Exhibit 1, all furloughed employees of REA Express can protect their seniority rights in accordance with the provisions of Rule 3 of the agreement as set forth at page 9 of Exhibit 1 hereto."

h) That "no adequate facility would be available for the handling of 'transfer' traffic in the Cleveland area after July 31, 1969, and because of a drastic decrease in the volume of traffic, REA Express contemplated the rerouting of its 'transfer' traffic which then moved through Cleveland so that Cincinnati would handle all traffic originating at or destined to offices or stations within the State of Ohio and that such change would take effect over the weekend of July 27, 1969."

■ Neither in the District Court nor in appellants' address to us has there been a claim that any of the plaintiffs have sought to employ the remedies available to them under the contract between BRAC and REA Express, or procedures provided by the Railway Labor Act. After the filing of the affidavit of Phillips in support of the BRAC motion for summary judgment, parts of which are set out above, no oath supported denial of its factual content was filed by plaintiffs. There was an affidavit filed by the Chairman of the Protective Committee of the Local Lodge of BRAC which contained the following:

"That deponent disagrees with the statement of H. H. Phillips set forth in Paragraph 14(3) (4) (5) (6)."

We do not read this as a sworn denial of the dispositive facts of the Phillips affidavit. After the filing of the motion for summary judgment by BRAC the plaintiffs presented a pleading entitled Memorandum of Plaintiff in Opposition to Motion of BRAC and H. H. Phillips to Dismiss the Complaint or in the Alternative for Summary Judgment. It contained the following:

"Defendants in their motion and supporting papers have attempted to set forth facts as being undisputed. Plaintiffs deny these allegations through the issues raised in the complaint. These alleged undisputed facts are matters of proof that should be tried by the Court. Plaintiffs in their complaint have set forth a short and plain statement of their claim as required by the Federal Rules of Civil Procedure (Rule 8(a) (2)). Defendants are afforded liberal opportunities to further investigate the claim of plaintiffs through liberal pre-trial procedures established by the Rules of Civil Procedure."

■ The unsworn averments of a complaint will not suffice, on motion for summary judgment, to put in issue facts set out and sworn to in an affidavit supporting such motion.

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response by affidavits or as otherwise in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e) Fed.R.Civ.P.

■ If plaintiffs' action against REA Exp. were bottomed solely upon a cause arising out of the bargaining agreement between it and the Brotherhood, the pri-

mary jurisdiction for resolution of the involved dispute was in the *National Railroad Adjustment Board.* 45 U.S.C. A. § 153. Ferro v. Railway Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961). However, if it relied upon a claim that the Brotherhood, by conspiracy with REA, was guilty of failure to fulfill its duty to fairly represent its members, such members could enter the District Court to vindicate their right to be fairly represented by the Brotherhood. Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); Glover v. St. Louis-S.F.R. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). The complaint may have sought to use such ruling by alleging that:

> "The defendants herein refused to comply with Rule 12 and entered into a discriminatory and fraudulent agreement wherein plaintiffs were not allowed to follow their work to the other seniority districts."

██ But if such a conclusional charge would be sufficient to invoke the jurisdiction of the District Court—absent a challenge by an oath-supported motion—the averments of the Phillips affidavit completely negative the factual basis for such a claim. What remains then is a claim that under the terms of the bargaining agreement between REA Exp. and the Brotherhood, and, without, taint of wrongdoing by the Brotherhood, the bargaining agreement between the Brotherhood and REA Exp. should be construed to call for the relief sought by plaintiffs. Resolution of this question would call for the invocation of the procedures of the Railway Labor Act after exhaustion of the Administrative remedies of the contract. In 45 U.S.C.A. § 152, Second, the Act calls for employer-employee consideration before invoking the machinery of the National Railroad Adjustment Board. The parties to this action have set out as part of their collective bargaining agreement the following section under Rule 11:

> "(i) Disputes growing out of personal grievances or out of the interpretation or application of agreements or practices concerning wages, rules or work-

ing conditions between the parties herein, may be handled by one or more duly accredited representatives, first with the immediate superior official designated by the Management to handle such disputes, and, if not satisfactorily settled, may be appealed by the representative in order of succession up to and including the highest official designated by the Management to whom appeals may be made."

This procedure was not used so that if there was not a satisfactory resolution of the problem, then the matter could have been brought before the Board under 45 U.S.C.A. § 153, First (i), which states:

> "(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; *but, failing to reach an adjustment in this manner,* the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." (Emphasis supplied.)

The Supreme Court in *Glover, supra,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519, allowed the petitioners to circumvent these administrative procedures because they had shown, or alleged, in the clearest possible terms, that to employ the grievance procedures would be futile. If such an allegation could be found in appellants' complaint, the supporting affidavit of defendant Phillips effectively refutes it. Had Phillips' representation of the members of the Brotherhood and his construction of the meaning and application of Rule 12 to the REA's rerouting of business to Cincinnati been a good faith, although mistaken, effort to

discharge his responsibilities, the Constitution of the union provided remedial procedures which should have been followed. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Neal v. System Board of Adjustment, 348 F.2d 722 (8th Cir. 1965); Gainey v. Brotherhood of Railway and Steamship Clerks, 275 F.2d 342 (3rd Cir. 1960).

We affirm the judgment of the District Court.