**L. F. COLE, Plaintiff-Appellee,**

v.

**ERIE LACKAWANNA RAILWAY COMPANY, Defendant-Appellant.**

**No. 75–2065.**

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1976.

Decided Aug. 19, 1976.

---

Carl V. Bruggeman, Robert M. Anspach, Toledo, Ohio, for defendant-appellant.

Eugene A. Yazel, G. A. Piacentino, Marion, Ohio, for plaintiff-appellee.

Before CELEBREZZE, PECK and ENGEL, Circuit Judges.

CELEBREZZE, Circuit Judge.

L. F. Cole (hereinafter Appellee) was discharged in 1971 by the Erie Lackawanna Railway Company (hereinafter Appellant) for alleged unsatisfactory job performance. Following unsuccessful grievance efforts, Appellee, pursuant to 45 U.S.C. § 153 Second [1] of the Railway Labor Act, sought

---

1. Second. Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board.

If written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board, or any dispute which has been pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such request is made. The cases which may be considered by such board shall be defined in the agreement establishing it. Such board shall consist of one

person designated by the carrier and one person designated by the representative of the employees. If such carrier or such representative fails to agree upon the establishment of such a board as provided herein, or to exercise its rights to designate a member of the board, the carrier or representative making the request for the establishment of the special board may request the Mediation Board to designate a member of the special board on behalf of the carrier or representative upon whom such request was made. Upon receipt of a request for such designation the Mediation Board shall promptly make such designation and shall select an individual associated in interest with the carrier or representative he is to represent, who, with the member appointed by the carrier or representative requesting the establishment of the special board, shall constitute the board. Each member of the board shall be compensated by the party he is to represent. The members of the board so designated shall determine all matters not previously agreed upon by the carrier and the representative of the employees with respect to the establishment and jurisdiction of the board. If they are unable to agree such matters shall be determined by a neutral member of the board selected or appointed and compensated in the same manner as is hereinafter provided with respect to situations where the members of the board are unable to agree upon an award. Such neutral member shall cease to be a member of the board when he has

relief from a special board of adjustment. Section 153 is a lengthy statute, spanning some eight pages. The bulk of the section is devoted to establishing the National Railroad Adjustment Board (hereinafter the NRAB) and setting out its powers and duties. Section 153 Second, added by amendment in 1966, empowers carriers and their employees to set up local special adjustment boards to resolve claims which would otherwise be filed with the NRAB or which have remained on the NRAB docket for over a year.

In 1926 Congress first authorized carriers and their employees to establish boards of adjustment to resolve minor disputes.[2] However, the 1962 Act was fraught with problems in that no sanctions for failure to reach agreement were provided and failure to agree was commonplace as these early boards of adjustment were composed of equal members of employee and carrier representatives.

In 1934 Congress established the NRAB to provide a nationwide arbitration mechanism for resolving minor disputes between individual employees and carriers. The NRAB is divided into four divisions, each division hears claims from employees in particular job classifications. The NRAB sits in panels of three, one carrier-designated member, one member designated by employee representatives and one neutral panelist designated by the National Mediation Board.

The 1934 Act also carried forward authority to establish carrier, group or regional boards similar to those authorized in the 1926 Act. The above-noted problems with the early carrier-employee adjustment boards continued and such boards were seldom established. The result was the development of a backlog of thousands of claims awaiting disposition by the NRAB. In 1966, in response to this backlog, Congress amended the Railway Labor Act by adding Section 153 Second altering the structure of special adjustment boards to include a neutral panelist and authorizing such boards to hear claims otherwise referable to the NRAB.

Section 153 Second authorizes a carrier or group of carriers and representatives of the employees of such carrier or carriers to agree to the formation of a special adjustment board. If a carrier or union requests the formation of such a board and the non-requesting party does not agree to the formation of a board within thirty days of the date of the request the National Mediation Board is empowered to name a representative for the nonagreeing party. If the carrier and union representatives are unable to agree on the proper disposition of a

determined such matters. If with respect to any dispute or group of disputes the members of the board designated by the carrier and the representative are unable to agree upon an award disposing of the dispute or group of disputes they shall by mutual agreement select a neutral person to be a member of the board for the consideration and disposition of such dispute or group of disputes. In the event the members of the board designated by the parties are unable, within ten days after their failure to agree upon an award, to agree upon the selection of such neutral person, either member of the board may request the Mediation Board to appoint such neutral person and upon receipt of such request the Mediation Board shall promptly make such appointment. The neutral person so selected or appointed shall be compensated and reimbursed for expenses by the Mediation Board. Any two members of the board shall be competent to render an award. Such awards shall be final and binding upon both parties to the dispute and if in favor of the petitioner, shall direct the other party to comply therewith on or before the day named. Compliance with such awards shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board.

2. The history of the arbitration provisions of the Railway Labor Act has been thoroughly reviewed in a recent Fourth Circuit opinion, *Employees Protective Association v. Norfolk & W. Ry.*, 511 F.2d 1040, 1043–44 (4th Cir. 1975), and in a number of Supreme Court opinions cited therein: *Brotherhood of Railroad Trainmen v. Chicago R. & I. R.R.*, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

claim, the National Mediation Board is also empowered to appoint a neutral member to break the deadlock.

In 1971 Appellant and the United Transportation Union (hereinafter UTU), pursuant to an agreement, established a special adjustment board, Public Law Board No. 855 (hereinafter the Board), to resolve seven specified employee claims. Appellee's claim was one of the seven submitted to the Board.

In June of 1972, the Board, following its initial consideration of Appellee's claim, concluded that he had been dismissed for just cause and denied the claim. In April of 1973 Appellee filed an amended petition in district court seeking review of the Board's determination. In February of 1974 the district court granted Appellee's motion for summary judgment. The district court concluded that the Board had failed to provide Appellee with notice of its proceedings as required by 45 U.S.C. § 153 First (j).[3] The district court remanded the action to the Board. In October of 1974 the Board reconsidered its original determination and set aside Appellee's discharge, converting it into a 365-day disciplinary layoff, and ordered reinstatement and back pay for that portion of the layoff period in excess of 365 days. In December of 1974 Appellee petitioned the district court for enforcement of the Board's October determination.

In May of 1975 the district court sustained Appellee's second motion for summary judgment and ordered Appellant to comply with the Board's determination.[4] Appellant brings this appeal from the district court's enforcement order.

Appellant raises three issues in challenging the district court's order. Appellant contends that the district court lacked jurisdiction to review the Board's determination. Appellant next argues that the district court erred in applying the notice requirements of 45 U.S.C. Section 153 First (j) to a special adjustment board proceeding. Finally, Appellant argues that even if Section 153 First (j) applies to special adjustment board proceedings, Appellee received sufficient actual notice of the June 1972 hearing before the Board to satisfy the notice provision.

■ Appellant first contends that Section 153 First (q),[5] which makes district court review available to a party aggrieved by the failure of the NRAB to make an award or by the terms of an award, does not apply to determinations of special adjustment boards. Appellant notes that Section 153 Second which empowers the establishment of special adjustment boards, does not expressly incorporate Section 153 First (q). Appellant further notes that Section 153 Second and Section 153 First (q) were added by 1966 amendments to the Railway

---

3. (j) Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them.

4. *L. F. Cole v. Erie Lackawanna Ry.*, 396 F.Supp. 65 (N.D.Ohio 1975).

5. (q) If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of Title 28.

Labor Act contained in a single piece of legislation. Appellant thus concludes that if Congress had intended to make Section 153 First (q) applicable to special adjustment board proceedings it would have so stated in the text of the statute. Appellant cites no judicial authority for this proposition. Appellant also makes no attempt to analyze the legislative history of the 1966 amendments. Appellant's only analysis of this issue, other than the statutory construction argument is contained in a short paragraph at page 14 of its brief to the Court:

> The proceedings by way oof [sic] the Special Law Boards were designed to provide labor and management an expeditious way of handling minor disputes without going to the National Railroad Adjustment Board. There was no reason why the Special Law Board proceedings had to be handled in the same way that proceedings were handled in the National Railroad Adjustment Board.

Appellee responds by arguing that a review of the legislative history of the 1966 amendments demonstrates that Congress intended that parties to special adjustment board proceedings have the same access to limited district court review as would parties to NRAB proceedings. The purpose of the 1966 Amendments is set out in Senate Report No. 1201.[6] The Senate Report states that the purpose of the amendment was "to eliminate the large backlog [of cases pending before the NRAB] . . . and to provide equal opportunity for limited judicial review of awards of the [NRAB] to employees and employers."[7] The Report further states:

> The bill also provides that judicial review of orders of the National Railroad Adjustment Board, *and of boards established under this legislation,* relating to minor disputes in the railroad industry would be available to either party but limited to the determination of questions

traditionally involved in arbitration legislation—whether the tribunal had jurisdiction of the subject, whether the statutory requirements were complied with, and whether there was fraud or corruption on the part of a member of the tribunal. [Emphasis added.][8]

It is clear from the above legislative history that Congress intended the district courts to exercise limited judicial review over determinations of the NRAB and over determinations of special adjustment boards. We affirmed a district court conclusion to this effect in *United Transportation Union v. Clinchfield R.R.,* 427 F.2d 161 (6th Cir.), *cert. denied,* 400 U.S. 824, 91 S.Ct. 48, 27 L.Ed.2d 53 (1970). *Accord, Transportation-Communication Division—Brotherhood of Ry. v. St. Louis-San Francisco Ry.,* 419 F.2d 933, 935 (8th Cir. 1969); *Slagley v. Illinois Central R.R.,* 397 F.2d 546, 550–51 (7th Cir. 1968).

■ Appellant next argues that the notice requirements of Section 153 First (j) do not apply to special board proceedings and consequently the district court erred in overturning the June 1972 judgment of *Public Law Board No. 855 for failure to afford Appellee notice which satisfied Section 153 First (j).* Appellant's second argument is a remake of its first argument. Appellant contends that Section 153 First (j) does not apply in special board proceedings because it was not expressly incorporated in Section 153 Second. Again, Appellant cites no judicial authority for this contention. The district court concluded that Appellant's position in this issue "ignores the legislative history, as well as the plain language, of the statute."[9] One of the passages from the legislative history of the 1966 amendments which we quoted in discussing the first issue raised by Appellant supports the district court's conclusion on this issue:

**6.** 1966 U.S.Code Cong. and Admin.News, p. 2285 *et seq.*

**7.** *Id.* at 2285–2286.

**8.** *Id.* at 2289.

**9.** *L. F. Cole v. Erie Lackawanna Ry.,* No. C73–70 (N.D.Ohio Feb. 6, 1974). Appendix at 26.

The bill also provides that judicial review of orders of the National Railroad Adjustment Board, and of boards established under this legislation, relating to minor disputes in the railroad industry would be available to either party but limited to the determination of questions traditionally involved in arbitration legislation—whether the tribunal had jurisdiction of the subject, *whether the statutory requirements were complied with,* and whether there was fraud or corruption on the part of a member of the tribunal. [Emphasis added.] [10]

We concluded above that Section 153 Second incorporated Section 153 First (q) by implication, thereby allowing parties to special board proceedings to secure review in district court. The above quoted passage from the Senate Report on the 1966 amendments indicates that Congress also contemplated the incorporation of procedural requirements such as the notice provisions of Section 153 First (j). The Congressional purpose in authorizing the creation of special adjustment boards was to relieve the congested dockets of two of the four divisions of the NRAB. Congress was seeking to secure the speedy resolution of employee claims originally envisioned by the framers of the 1934 Act which created the NRAB. Congress envisioned special adjustment boards as local extensions of the NRAB. It is clear that special adjustment boards have jurisdiction coextensive with that of the NRAB. Appellant has advanced no good reason why the statutory procedural rights afforded to employees whose claims are heard by special adjustment boards should be less than those enjoyed by employees whose claims are resolved by the NRAB. We therefore conclude that Section 153 First (j) applies to proceedings before special adjustment boards.

Finally, Appellant argues that the district court erred in concluding that Appellee did not receive notice sufficient to satisfy Section 153 First (j) prior to the Board's initial consideration of his claim. Appellant concedes that the Board did not furnish Appellee formal notice, but contends that Appellee had actual notice of the Board proceedings.

The seminal discussion of actual notice in this context is contained in *Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), (*Burley I*), and *Elgin, J. & E. Ry. v. Burley,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946), (*Burley II*). In *Burley I* the Supreme Court stated that an employee who has filed a claim with the NRAB has rights to

"notice, hearing and individual representation according to his choice. All these rights are separate and distinct, though closely related. A surrender or delegation of one would not result in surrender of the others as a matter of law or necessarily as a matter of fact." [11]

In *Burley II* the Court noted that frequently an employee will authorize a collective agent to deal with the carrier in resolving a grievance. The Court elaborated on its *Burley I* statement concerning notice:

It is not likely that workingmen having grievances will be ignorant in many cases either of negotiations conducted between the collective agent and the carrier for their settlement or of the fact that the dispute has been submitted by one or the other to the Adjustment Board for determination. * * *

In view of these facts there cannot be many instances in which an aggrieved employee will not have knowledge or notice that negotiations affecting his claim are being conducted, or, if they fail, that proceedings are pending before the Board to dispose of it.

We pointed out in the former opinion that § 3 First (j) expressly provides that "the several divisions of the Adjustment Board shall give due notice of all hearings *to the employee* or employees and the carrier or carriers involved in any dispute submitted to them," 325 U.S. at pages 731, 734, 65 S.Ct. 1293, 1295, and

---

**10.** 1966 U.S.Code Cong. and Admin.News, 2285, at 2289.

**11.** 325 U.S. at 746, 65 S.Ct. at 1300.

this provision, with the emphasis we placed upon the phrase "to the employee" and the conjunction of the provision for "due notice" with the provision for representation "in person, by counsel, or by other representatives", was one of the statutory mainstays for our conclusion that the Act did not give the collective agent the exclusive powers over the settlement of grievances claimed for it.

But we did not undertake to define what was meant by "due notice," nor do we now. "Due notice" conceivably could be given or had in a variety of forms, more especially when account is taken of the generally informal procedure of the Board. It would require at the least, we think, knowledge on the aggrieved employee's part of the pendency of the proceedings or knowledge of such facts as would be sufficient to put him on notice of their pendency.[12]

The Court then concluded:

Although under our ruling his rights to have voice in the settlement are preserved, whether by conferring with the carrier and, having seasonably done so, ·refusing to be bound by a settlement reached over his protest, or by having representation before the Board according to his own choice, we did not rule, and there is no basis for assuming we did, that an employee can stand by with knowledge or notice of what is going on with reference to his claim, either between the carrier and the union on the property, or before the Board on their submission, allow matters to be thrashed out to a conclusion by one method or the other, and then come in for the first time to assert his individual rights.[13]

**12.** 327 U.S. at 665–666, 66 S.Ct. at 723.

**13.** *Id.* at 666–667, 66 S.Ct. at 723–724.

**14.** ARTICLE 44
    AUTHORITY TO REPRESENT
    Every member of the United Transportation Union grants complete authority to the United Transportation Union and any of its constituted representatives to act in said member's behalf for the purpose of disposing, in any manner, of

Appellant does not dispute the fact that the Board did not furnish Appellee formal notice of its proceedings on his claim. However, the Board's failure to furnish formal notice to Appellee does not in this instance resolve the notice question. We agree with a line of Seventh Circuit decisions which have expanded on *Burley I* and *Burley II* to hold that in situations where employee-grievants have authorized their union to handle their grievances, NRAB statutory notice provisions are satisfied if the employee receives actual notice of the proceedings. *See, Kotakis v. Elgin, J. & E. Ry.,* 520 F.2d 570, 576 (7th Cir. 1975), *cert. denied,* 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 388, 44 U.S.L.W. 3344 (1975); *Illinois Central R. R. v. Whitehouse,* 212 F.2d 22, 29 (7th Cir. 1954) *rev'd on other grounds,* 349 U.S. 366, 76 S.Ct. 845, 99 L.Ed. 1155 (1955); *Hunter v. Atchison, T. & S. F. Ry.,* 188 F.2d 294, 301 (7th Cir. 1951).

Actual notice for this purpose is notice of the hearing for a sufficient period prior thereto to permit the employee to consult with union officials and relay such information as he possesses which might allow the union to more effectively present his claim.

A review of the record demonstrates that Appellee authorized the UTU to handle his grievance. The union represented Appellee in dealing with the carrier. When these efforts met with no success Appellee authorized the union to attempt to secure relief for Appellee from a special adjustment board. Appellee's actions leave little room for doubt about his reliance on the UTU to handle his claim before the special adjustment board, but any existing doubt must be resolved in favor of authorization in light of Article 44 of the UTU Constitution.[14] which grants the union "complete

any and all of said member's claims, complaints, or grievances against their employer; and to submit such claims, complaints, or grievances for determination to any person, board, or other tribunal provided by law or otherwise as may be deemed to be necessary. The United Transportation Union shall have authority to receive notice of hearings, or to waive hearing, and to appear for, represent, and act for its members before any person, board, or other tribunal in connection with con-

authority" to represent members before any "board or other tribunal."

Appellant contends that statements made by Appellee in a February 13, 1975, deposition amount to an admission of receipt of actual notice of the Board proceedings on his claim. Appellee's statements were in response to questions about his contact with UTU officials prior to the Board proceedings:

Q. And you didn't do anything on your own to process it [the claim] yourself, I gather?

A. No; I didn't. I asked them if there was anything I could do for them and they said no, they said there isn't anything we could do.

I asked them if I could bring any witnesses or just come in there myself and they said there was no use.

Q. Now, we are talking about a Board procedure hearing as contrasted to meeting with the management people?

A. I don't quite understand that.

Q. You say they told you that you couldn't do anything and I'm asking you was that with respect to a Board procedure when they were going to go before it or did that have to do when they were dealing directly with the Superintendent or whoever it was of management at a lower level?

A. I asked them at the lower level. First we had the investigation; that came first and then I asked them when we went before the Board on the final one up there for the decision and they made the statement that they had four cases and mine was the best one of the four and that I didn't have to bring any witnesses in and I couldn't go in myself because it was a closed door session is what they told me, what Murphey told me.

Q. But you knew there was going to be a hearing?

A. Oh, yes; I knew there was going to be a hearing.

Q. And they told you though that there wasn't any sense in going?

A. Right." [15]

Appellee's statements indicate that he knew in advance that the Board would be conducting a hearing on his claim. However, Appellee's statements also vividly demonstrate that he did not understand the workings of the Board. His reference to the Board as the "Labor Relations Board" and his requests to be present and present witnesses are further indicia of his lack of understanding. Appellant has not attempted to refute Appellee's statements concerning the union officials telling him that he could not attend the hearing on his claim and that his witnesses would not be needed. Thus the only inference which may be drawn from the record is that Appellee was not allowed to convey information which might have been helpful in presenting his claim. The union cannot contend that Appellee's right to effective presentation of his claim to the Board, as guaranteed by Section 153 First (j), has been preserved when he was prevented from conveying potentially helpful information to the Board via union officials. Appellee did not receive notice sufficient to obviate the provision to him of formal notice as required by Section 153 First (j). As the district court noted in concluding that the Board's original determination was improper:

"Without a formal notice from the Board, plaintiff was foreclosed from making the very decision [to represent himself or to be represented by counsel or by union representatives] which § 9 First (j) empowers him to make; thus, his failure to

---

sideration and determination of claims, complaints, or grievances, subject to the right of appeal in accordance with the provisions of this Constitution, except where the member involved serves reasonable written notice on the United Transportation Union to the contrary.

Decisions reached disposing of or settling claims, complaints, and grievances referred to herein shall be furnished in writing, within thirty (30) days after such decision, to the Local Chairman and Secretary of the local submitting such claims, complaints, and grievances.

**15.** Appellant's Appendix at 45–46.

act affirmatively cannot be held to have been a waiver of his right." [16]

The judgment of the district court is affirmed.

ENGEL, Circuit Judge (dissenting).

I agree with the majority that the district court had jurisdiction to exercise a limited judicial review over the determination of the special adjustment board. I further agree with the majority that the provisions of § 153 First (j) apply to proceedings before special adjustment boards under 45 U.S.C. § 153 Second. I am unable, however, to agree that the appellee did not receive notice sufficient to satisfy § 153 First (j), especially in view of the majority's clearly supported finding that the appellee authorized the U.T.U. to handle his grievance, both personally and by virtue of the authorization contained in Article 44 of the U.T.U. Constitution.

As appellee himself acknowledged, he knew in advance that the Board would be conducting a hearing on his claim and expected the union to represent him personally. Apparently, the majority opinion holds what the Supreme Court in *Burley II* expressly ruled it would not hold:

". . . that any employee can stand by with knowledge or notice of what is going on with reference to his claim, either between the carrier and the union on the property, or before the Board on their submission, allow matters to be threshed out to a conclusion by one method or the other, and then come in for the first time to assert his individual rights." *Burley II, supra,* 327 U.S. at 666, 66 S.Ct. at 723.

The majority appears to construe the holding in *Burley I* and *II* to require both employee authorization to the union to prosecute his individual claim *and* formal or actual notice. However, the Supreme Court in the *Burley* decisions held that the rights accorded by § 153 First (j) ". . . 'are statutory rights, which he may exercise independently *or authorize the union to exercise in his behalf*'". *Czosek v. O'Mara,* 397 U.S. 25, 28 n. 1, 90 S.Ct. 770, 773, 25

L.Ed.2d 21 (1970), quoting *Burley I, supra,* 325 U.S. at 740 n. 39, 65 S.Ct. 1282 (emphasis added). The question of actual notice is important only insofar as it infers authority by estoppel. "Even the ordinary law of agency attributes authority to a representative to act when the principal stands by with knowledge or notice of his assumption of that authority and permits the third person to act to his injury upon the same assumption." *Burley II, supra,* at 665 n. 7, 66 S.Ct. at 723. Thus, the Second Circuit in *Pyzynski v. New York Central R. R.,* 421 F.2d 854, 859, 860 (2nd Cir. 1970) stated:

"The *Burley* decisions may be said to have held that a carrier may rely on the authority of a union to negotiate a conclusive settlement of an employee's grievance if it can be shown either that the union acted upon the basis of actual authority, whether individually given or to be gathered from the union constitution or by-laws *or* from custom and usage *or* that the employee had notice or knowledge of the actions taken by the union in his behalf and took no steps to negate the union's authority." (emphasis added)

The dictates of *Burley* have been satisfied in the instant case both by granted authority (individually given and by the union constitution) and the actual knowledge possessed by Cole.

Nor do I understand *Kotakis v. Elgin, J. & E. Ry.,* 520 F.2d 570 (7th Cir. 1975); *Illinois Central R. R. v. Whitehouse,* 212 F.2d 22 (7th Cir. 1954), *rev'd* on other grounds, 349 U.S. 366, 76 S.Ct. 845, 99 L.Ed. 1155 (1955), and *Hunter v. Atchison, T. & S. F. Ry.,* 188 F.2d 294 (7th Cir. 1951) to have expanded *Burley I* and *Burley II* to invalidate the Board hearing in the instant case.

In *Kotakis, supra,* at 576, the court simply observed:

"Moreover, the record discloses that plaintiff knew his grievance had been submitted to the adjustment board and that he had authorized the union to represent him here. That satisfies the notice requirement."

16. *Cole v. Erie Lackawanna Ry.,* 396 F.Supp. 65, 69 (N.D.Ohio 1975).

In *Illinois Central v. Whitehouse, supra,* the court held only that the notice was required to be sent to a second union in a dispute primarily between the railroad and petitioning union because the second union's interests were impinged, and finally, in *Hunter v. Atchison, supra,* the court held that "actual notice of the hearings for a sufficient period prior thereto to permit plaintiffs to be present and to be heard is all that is required". However, plaintiffs in *Hunter* were not members of the union which had petitioned the Board to decide whether its members or plaintiffs were entitled to certain jobs with the carrier. Therefore, there was obviously no question of whether the union was authorized to act on behalf of plaintiffs. It was not. Their interests were adverse.

The effect of the majority opinion, as I see it, is to give the employee and the union a second bite of the apple merely by their mutual agreement that union representation was inadequate, a confession easy to make when the union suffers no penalty and difficult, if not impossible, to refute by the Board or the carrier since neither has been privy to the incident.

The better course, I believe, is to leave the employee to his remedy against the union for breach of its duty of fair representation. It is significant, I think, that this duty was originally created in the specific context of the Railway Labor Act, *Steele v. Lousiville & Nashville R. R.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). *Steele* in turn provided the blueprint for *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). See also *Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). Resort to this line of decisions as a remedy for the type of complaint here has the advantage of preserving the integrity of established grievance procedures. The Board and the carrier may deal with confidence with the union. The union is not undercut by Board and carrier efforts to by-pass it in order to ascertain whether it actually represents the employee. The employee benefits because the union will be encouraged to present the carrier's best case the first time around and may be penalized by its failure to represent the employee fairly.

Finally, I am unable to see upon the facts in this case how more formal or direct notice to Mr. Cole would have affected his course of action. He clearly authorized the union to represent him. He conferred with the union and acted on its advice and counsel. The difficulty is not in the notice; it is in the advice which the union gave Cole after the notice. As a practical matter a union member will invariably follow the advice of his union agent over the advice contained in a notice given him by the carrier or the Board, however formal or detailed.

I would reverse the judgment of the district court and remand for entry of judgment denying enforcement of the award.