Aristos G. **ANTONAROS,** Plaintiff,

v.

the **NORFOLK AND WESTERN RAILWAY CO., et al.,** Defendants.

No. C–1–85–0409.

United States District Court, S.D. Ohio, W.D.

June 17, 1986.

Robert K. Handelman, Handelman & Kilroy, Columbus, Ohio, for plaintiff.

Robert J. Townsend, Taft, Stettinius & Hollister, Cincinnati, Ohio, for Norfolk & Western Railway.

Patrick J. Foley, Minneapolis, Minn., Deft. Unions Trial Atty., for IAM.

Jerry Skinner, Cincinnati, Ohio, for defendants.

SPIEGEL, District Judge.

This matter came on for consideration of the motion for summary judgment by defendant unions (doc. 11), motion for summary judgment by defendant Norfolk & Western Railway Co. (the "Railroad") (doc. 16), memorandum *contra* by plaintiff (doc. 22), reply brief and motion for summary judgment by defendant unions (doc. 23), and reply memorandum by defendant Railway (doc. 24).

This is an action in which plaintiff seeks review of an order of the National Railroad Adjustment Board (NRAB), upholding his discharge from employment with the defendant Railroad. He alleges that defendant violated certain provisions of the Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq.*, including the failure to provide notice of proceedings, the appointment of a biased hearing officer, the failure of the defendant union to fairly represent him, and the breach of the collective bargaining agreement between the Union and the Railroad.

Defendants urge this Court to grant summary judgment in their favor on a number of grounds. First, defendants maintain that the evidence demonstrates that plaintiff was adequately represented by the Union at the investigation, on appeal, and before the NRAB. Second, they contend that the hearing officer was not biased against plaintiff, and in any event, the decision to discharge plaintiff did not result from any credibility issues determined by the hearing officer. Rather, plaintiff admitted that he had taken certain items without permission. Third, defendants maintain that plaintiff received adequate notice under the Railway Labor Act with respect to the proceedings before the NRAB.

In considering a motion for summary judgment, the narrow question we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be

tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be clearly scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.*, quoting Rule 56(c), Fed.R.Civ.P. Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.*

Plaintiff was employed by the defendant railroad as a machinist from November, 1972 until he was discharged on June 5, 1980. Plaintiff asserts that sometime prior to January 28, 1980, he provided information to the chairman of the grievance committee of the International Association of Machinists & Aerospace Workers ("IAM") Local Lodge # 1011, which led to the filing of a "time claim" against the railroads' general foreman, James Corea, accusing Corea of performing machinists' work assigned to plaintiff. Although plaintiff alleges in his complaint that he signed the grievance against Corea, in a subsequent deposition, plaintiff stated that he had never seen the grievance itself and learned about it for the first time when Corea asked him about it, which was probably the day after the grievance was filed. Union officer Walker testified that he had filed the claim against Corea on January 28, 1980. Shortly thereafter, Corea told Walker that he would see plaintiff the next day and would "take care of him." Apparently there was a confrontation between Corea and plaintiff about the grievance. Plaintiff testified that the conversation between them was heated, while Corea testified that plaintiff had denied any knowledge of the time claim and that Corea believed him.

On April 30, 1980, plaintiff received a letter from the railroad notifying him that an investigation would be held to determine his responsibility in connection with missing parts for circular saws which he had previously ordered and the unauthorized possession of railroad property found at plaintiff's residence. The hearing officer chosen by the railroad to preside over that investigation was James Corea, the same person who had earlier promised to "take care of [plaintiff]." Before or during the investigation, the Union representatives did not object to Corea acting as the hearing officer in plaintiff's case. The Union representative testified that they decided not to raise the issues of Corea's bias at the hearing stage, but concluded that they would raise it upon appeal, if necessary. The Union alleges that this decision was simply a matter of strategy, as the Union had no right to disqualify the hearing officer and the Union's quarrelling with him at the beginning of the investigation could have been construed as an attempt to "blackball" the hearing officer, which could have worked against plaintiff. After a lengthy investigation, during which plaintiff admitted that he had removed certain company property without permission, the hearing officer determined that plaintiff should be discharged from his employment with the railroad.

Thereafter, the Union sent numerous letters to the railroad, appealing the decision, alleging that the hearing officer was biased and notifying it about the threats the hearing officer had made to "take care of [plaintiff]." The railroad rejected the appeal on the basis that plaintiff had ordered an exorbitant amount of parts to repair four saws, which were valued substantially less than the costs of the parts, and that he had company property stored in his garage at his personal residence.

The Union also filed notice of its intent to submit plaintiff's claim for adjustment with the NRAB. The letters of appeal sent to

railroad personnel, apprising them of the hearing officer's alleged bias, were made part of the administrative file. On August 8, 1984, the NRAB rendered its decision, concluding that there was sufficient credible evidence in the record to support a finding of guilt and that the plaintiff had received a fair and impartial hearing. The NRAB specifically found that the hearing officer was not biased and that plaintiff had admitted the charge of unauthorized possession of railroad property.

Plaintiff also alleges that he was not informed of his right to appear before the NRAB, in violation of 45 U.S.C. § 153 First (j) which provides:

> Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them.

Plaintiff alleges that it was not until April of 1982 that he discovered that his claim had been submitted to the NRAB and that the Union, which had previously waived oral hearing, was awaiting the Board's decision. Plaintiff asserts that he desired to appear before the NRAB to present his testimony or argument that the hearing officer was prejudiced, and to state that the items "taken" were "old broken up copper and brass collected over a period of time and taken from the trash."

The defendants maintain that plaintiff expressly waived his right to notice of the proceedings when he executed a document on April 7, 1981 which provided as follows:

> I, or we, hereby empower such representative to present, settle, adjust or compromise the said grievance, complaint or dispute, either in conference or by any other means and procedures, including those provided by the Railway Labor Act, and waive all rights to notice provided by statute or otherwise.
>
> I, or we, hereby ratify and confirm any action or actions hereafter taken by the International Association of Machinists

and Aerospace Workers of the AFL–CIO in connection with the handling of such grievance, complaint or dispute.

Moreover, defendants maintain that plaintiff had more than enough notice of the NRAB proceedings in order to permit him to inform the Union of his desire to appear before the NRAB had he wished. In particular, the defendants point out the following from plaintiff's own affidavit:

> He admits that on June 10, 1981, his wife received a letter from IAM representative G.R. De Hague that informed Antonaros that his claim would be processed before the NRAB. Antonaros also admits that on or about April 15, 1982, the Union's Local Chairman, Gordon Boggs, a friend of Antonaros who had testified on his behalf at the investigation hearing, provided him with a copy of a letter that specifically informed Antonaros that 'your claim will have to be submitted to the National Railroad Adjustment Board' ... Antonaros admits that on or about October 1, 1982, he received a specific NRAB notice concerning this case and a letter from the Union concerning the status of his case.

Defendants state that despite the receipt of all of this notice that there would be NRAB processing, Antonaros never communicated his desire to participate in the appeal and in an oral hearing before the NRAB.

It is well established that the Railway Labor Act, 45 U.S.C. § 153 allows an extremely limited judicial review of a decision of the Adjustment Board.

Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U.S.C. Sec. 153 First (q). Only upon one or more of these bases may a court set aside an order of the Adjustment Board. *Union Pacific Railroad Co.*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58

L.Ed.2d 354 (1978), *reh. den.*, 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1979).

■ However, if an employee can establish that his Union breached its implied duty of fair representation, then even a binding decision of the Board can be set aside if the breach seriously undermined the integrity of the arbitral process. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976).

■ From the outset, we conclude that this Court's very narrow scope of review does not permit us to disturb the NRAB's finding that the hearing officer was not biased. *See Brotherhood of Railroad Signalmen v. Louisville & Nashville Railroad Company*, 688 F.2d 535 (7th Cir. 1982). Moreover, we note that plaintiff does not allege that any Board member of the arbitral body was biased against him, depriving him of fundamental due process. Therefore, the Board's decision is a final one. *Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295 (5th Cir.1981). However, that does not preclude the Court from deciding whether the failure of the Union to object to the appointment of James Corea as hearing officer at the investigating stage constituted a breach of the Union's duty of fair representation which undermined the integrity of the arbitral process.

■ After carefully reviewing the papers filed in this case and listening to the oral arguments presented by counsel, we conclude that the Union's failure to object did not rise to such a level.

■ A breach of the statutory duty of fair representation occurs only when a union's conduct is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). Moreover, the Union does not acquire liability for its decisions or judgment calls as long as the decision has a reasonable basis and "mere negligence is insufficient to establish a breach of a duty of fair representation." *Poole v. Budd Co.*, 706 F.2d 181, 184 (6th Cir.1983). In this case, the Union explains that the decision not to

raise the issue of the hearing officer's bias at the initial investigation was a strategic one. The Union points out that it raised the issue of Corea's alleged bias at every step of the appeal process and the NRAB considered that issue on the merits. We decline to second-guess the Union representatives' opinion as to the manner in which plaintiff's case should have been handled, particularly since the NRAB did consider the issue of bias on appeal.

Most important, our review of the record reveals that the decision of the NRAB upholding plaintiff's discharge did not turn upon any credibility issues which were determined by the hearing officer. To the contrary, the NRAB's decision was based upon plaintiff's own admission of guilt, that he had railroad property at his personal residence without permission. The only issue which involved credibility was with regard to the missing saw parts. The NRAB exonerated plaintiff on that charge. Therefore, we fail to see how the bias or impartiality of the hearing officer or the failure of the Union to object earlier is of any import in this case.

Much less vigorously, plaintiff argues that the Union is liable to him because it failed to secure witnesses providing exculpatory evidence. However, plaintiff never objected to the Union's failure to call additional witnesses. Moreover, plaintiff readily admits that the evidence that these witnesses would have produced was presented by other persons during the investigation. In light of plaintiff's own admission of guilt as to the brass and copper parts found at his residence, the rejection of a guilty finding concerning the saw parts by the NRAB, and the admission of plaintiff that the information that could be provided by these witnesses was already presented by others, we conclude that the Union, likewise, did not breach its duty of fair representation on this basis.

■ Finally, we address plaintiff's contention that he was not provided proper notice of the proceedings before the NRAB. We rely upon the judicially created ground for setting aside a binding

decision of the NRAB set forth in *Hines v. Anchor Motor Freight*, 424 U.S. 454, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976),[1] as well as the statutory exception of the failure of the division to comply with the requirement of the Railway Labor Act set forth in 45 U.S.C. § 153 First (j)[2] as a basis for review. As we previously noted, the evidence is clear that plaintiff had notice of the proceedings as early as June 10, 1981 when his wife received a letter from Union representative, G.R. De Hague that his claim would be processed before the NRAB. Thereafter, plaintiff received several letters discussing NRAB proceedings, including a notice from NRAB on October 1, 1982 concerning status of his case. There is no evidence that plaintiff approached the Union representatives about his attending the NRAB proceedings.

Our parent Circuit has held that "the 'due notice' requirement of § 153 First (j) is satisfied if an employee is given formal notice of the proceedings or if the employee has authorized his union to process his grievance and he also has actual notice of the proceedings." *Meeks v. Illinois Central Gulf R.R.*, 738 F.2d 748 (6th Cir.1984) (*citing Cole v. Erie Lackawanna Railway*, 541 F.2d 528 (6th Cir.1976), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977)).[3]

> Actual notice for this purpose is notice of the hearing for a sufficient period prior thereto to permit the employee to consult with Union officials and relay such information as he possesses which might allow the Union to more effectively present his claim. *Cole*, 541 F.2d at 534.

In this case, there is no dispute that plaintiff authorized the Union to process his grievance. The only question is wheth-er plaintiff was given actual notice of the NRAB proceeding, either formal or informal. We conclude that there is ample evidence in the record that plaintiff was aware that his case was before the NRAB for at least two years before a decision was rendered. On the same note, the record is devoid of evidence that plaintiff told the Union that he desired to appear before the NRAB.

In *Elgin, Joliet & Eastern Railway Co. v. Burley*, 327 U.S. 661, 666-667, 66 S.Ct. 721, 723, 90 L.Ed. 928 (1946), the Court stated:

> [W]e did not rule ... that an employee can stand by with knowledge or notice of what is going on with reference to his claim, either between the carrier and the Union on the property, or before the Board on their submission, allow matters to be thrashed out to a conclusion by one method or the other, and then come in for the first time to assert his individual rights.

We find that plaintiff had actual notice of the NRAB proceedings and, therefore, plaintiff's second argument is without merit. In any event, plaintiff has failed to demonstrate that the decision of the NRAB would have been different had he been present, since the decision of the NRAB was ultimately based upon his own admission of guilt.

The defendants assert two additional grounds for dismissal in their motions for summary judgment: plaintiff is guilty of laches and he is barred by the statute of limitations. Because we find that the Union did not breach its duty of fair representation and plaintiff had actual notice of the NRAB proceeding, it is unnecessary to reach those additional issues.

---

1. [I]f [the Union's breach of duty] seriously undermines the integrity of the arbitral process, the Union's breach also removes the bar of the finality provision of the contract. *Hines v. Anchor Motor Freight*, 424 U.S. at 567, 96 S.Ct. at 1058.

2. 45 U.S.C. § 153 First (j) provides that "the Adjustment Board shall give due notice of all hearings to the employee ... involved in any dispute submitted to them."

3. There is a split of authority between the Sixth Circuit and the Seventh Circuit on what type of notice must be given to an employee. The Seventh Circuit's view is that when an employee authorizes his Union to process his grievance, it is unnecessary that the employee has actual notice of the proceedings. *See O'Neill v. Public Law Board No. 550*, 581 F.2d 692 (7th Cir.1981).

Accordingly, defendants' motion for summary judgment is granted and this action is dismissed.

SO ORDERED.