Kenneth SMOOT, Plaintiff,

v.

UNITED TRANSPORTATION UNION, et al., Defendants.

No. 1:94CV485.

United States District Court, N.D. Ohio.

Jan. 28, 1998.

Merritt W. Green, III, Nathan & Roberts, Toledo, OH, for Plaintiff.

Dennis Haines, Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, Norton N. Newborn, Law Offices of Norton N. Newborn, Cleveland, OH, John A. Edmond, Anna L. Francis, Guerrieri, Edmond & Clayman, Washington, DC, Gregory V. Mersol, John B. Lewis, Joseph J. Morford, Arter & Haden, Cleveland, OH, for Defendants.

### MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon Defendants, Motions for Summary Judgment (Dkt. 31, 40) and Plaintiff's Motion for an Order denying Defendants' Motion for Sum-

mary Judgment (Dkt.# 34). This Court granted Public Law Board 3882's ("PLB") Motion to Dismiss (Dkt.# 14) by marginal entry order on December 12, 1995. For the reasons set forth below, the Court finds Defendants' motions to be meritorious.

### FACTS

In June 1979, Plaintiff began working for CSXT as a trainman where he was represented by the UTU. In October 1989, the UTU and CSXT negotiated a new "crew consist" agreement negotiated by UTU General Chairman V.V. Elswick ("Elswick") providing for reductions in train crew sizes, but granting additional benefits to remaining tram crew members.

One of the additional benefits was the contribution of 30 shares of CSXT common stock into the ESOP/401k plan account of train service employees satisfying the eligibility rules. Eligible employees were those who (1) during the preceding calendar year qualified for a vacation in the year in which the stock is credited, or completed 1000 hours of compensated service, and (2) is in active status (or in reserve pool status) on November 30, of the year in which the stock is contributed who is subject to the collectively bargained agreement between CSXT and the UTU.

In July 1990, Plaintiff took classes to qualify for engine service. In October 1991, Plaintiff was required to report for duty as an engineer. Plaintiff worked as an engineer on November 30, 1991 and several days thereafter before returning to his post as a trainman. Plaintiff did not receive his 30 shares of CSXT common stock per the collective bargaining agreement. Plaintiff argues that he was a trainman and a member of the UTU, and, therefore, was entitled to those benefits pursuant to the collective bargaining agreement.

In January 1992, Plaintiff petitioned Elswick to represent him in a grievance action to recover the 30 shares of stock. Elswick allegedly informed Plaintiff that he did not qualify for the stock option as he was an engineer at the time the stock was to be distributed. Plaintiff appealed Elswick's determination to the UTU Board of Appeals, the union's internal appeals board. The Board of Appeals unanimously ruled that Plaintiff was entitled to the 30 shares of stock and that his claim should be pursued before the PLB. Elswick, who was required to represent Plaintiff at the PLB, removed himself and appointed UTU Vice–Chairman Robert Earley ("Earley")to represent Plaintiff.

Furthermore, Plaintiff contends that the neutral member of the PLB, H.R. Cluster ("Cluster") erred in admitting extrinsic evidence, namely the testimony of H.S. Emrick of CSXT and Elswick, regarding their intent in negotiating the crew consist agreement.

Plaintiff finally avers that prior to the PLB convening, the neutral member of the board, Cluster, cleared the room for an executive session. It is in this executive session that Plaintiff claims that the UTU and CSXT representative, along with the neutral member, conspired to deprive hen of his benefits.

### LAW

Fed.R.Civ.P. 56(c) governs summary judgment and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and liar these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may he discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (1995). If the moving party meets this bur-

den, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The nonmoving party must present more that a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249.

*First and Second Causes of Action:*

■ Public Law Boards are treated identically to National Railroad Adjustment Boards ("NRAB"). The Sixth Circuit in *Cole v. Erie Lackawanna Ry. Co.,* 541 F.2d 528 (6th Cir.1976), held that "Congress envisioned special adjustment boards as local extensions of the NRAB. It is clear that special adjustment boards have jurisdiction coextensive with that of the NRAB ... We therefore conclude that Section 153 first ... applies to proceedings before special adjustment boards." *Id.* at 533. Therefore, the Public Law Board at issue in the present case is governed by the same laws as the National Railroad Adjustment Board.

The jurisdiction exercised by federal district courts over Public Law Boards is extremely limited. The Supreme Court in *Union Pacific RR. Co. v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), held

> Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption.... Only upon one or more of these bases may a court set aside an order of the Adjustment Board.

*Id.* at 93. *See also Cole,* 541 F.2d at 532. The same standard applies to Public Law Boards. Plaintiff claims that Defendants, predeterminations and consideration of matters outside of the record is tantamount to "fraud and corruption" under *Union Pacific.*

However, this Court lacks jurisdiction over Plaintiff's claim against CSXT and the UTU regarding the finding of the grounds that Plaintiff's dispute with the CSXT is "minor."

The Sixth Circuit in *McKinney v. International Ass'n of Machinists, Etc.,* 624 F.2d 745 (6th Cir.1980), held:

> Section 3(i) of the Railway Labor Act, 45 § 1 53(i), provides plaintiffs with another avenue of redress. Pursuit of such a remedy is required when the dispute is 'minor' and cannot be resolved through negotiations or prescribed grievance procedures. If such is the case, the National Railway Adjustment Board then has primary and exclusive jurisdiction to interpret the parties, agreement and make a binding award.

*Id.* at 748. *See also Local 1477, United Transportation Union v. Baker,* 482 F.2d 228 (6th Cir.1973) (A "minor" dispute includes a controversy over the meaning of an existing collective bargaining agreement in a particular fact situation).

Plaintiff's claim for a bonus in the form he the form of stock is "minor." *See Hudie v. Aliquippa & Southern Railroad Co.,* 249 F.Supp. 210 (1966). (Plaintiff's claim for a recalculation of bonus payments under a collective bargaining agreement involved "a 'minor' dispute over which the National Railroad Adjustment Board has primary jurisdiction exclusive of any court."); *See also Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co.,* 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963).

Plaintiffs dispute was not satisfactorily resolved by the PLB. Rather than petitioning this Court to vacate the finding of the PLB, he should have pursued his claim with the National Railroad Adjustment Board, following its procedures, as it is, with a few exceptions, the exclusive arbiter of these claims.

In sum, CSXT and UTU should be awarded summary judgment because this Court does not have jurisdiction over the claims.

*Third Cause of Action:*

"The Defendant UTU breached its contractual duty of fair representation and assistance to Plaintiff in that the damages sustained by the Plaintiff were the direct and proximate result of the failure of the Defendant UTU to meet its contractual obligations owed to the Plaintiff."

The Supreme Court in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), defined the duty of fair representation as, "a statutory obligation to serve the interests of all members [of a bargaining unit] without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* at 177.

In order to charge a union with breach of the duty of fair representation, the plaintiff must prove arbitrary, discriminatory or hart faith action or some other animus related to the conduct of the Union. *McKinney*, 624 F.2d at 748.

In the instant matter, Elswick made an initial determination that Plaintiff's claim lacked merit. Plaintiff took his grievance before the UTU Board of Appeals which unanimously recommended that Plaintiff's claim be pursued. Elswick removed himself from the Public Law Board and appointed Earley to represent him in his stead on the PLB. Plaintiff urges the Court to interpret these facts as an attempt by Elswick to influence the PLB through his testimony. However, the Court is inclined to view Elswick's departure from the PLB as an effort to remove the spectra of improper influence or bias from the PLB.

Plaintiff further urges the Court to consider the PLB's closed door session fraudulent and corrupt, conferring jurisdiction upon this Court to hear the rest of his claim.

However, the evidence presented by the UTU establishes that it considered the report of the UTU Board of Appeals in evaluating Plaintiff's case. Plaintiff alleges that Earley did not present the PLB with the report of the UTU Board of Appeals. However, Defendants' refute Plaintiff's allegation citing the award of the PLB which referenced the UTU Board of Appeals decision. ("Under internal UTU constitutional procedures, he appealed the General Chairman's decision to the UTU Board of Appeals, which, upon the basis of written submissions from the Claimant and General Chairman Elswick, determined that Claimant's position was correct, and sustained his appeal" Public Law Board 3882, Award No. 155, Case No. 5079–C & O, p. 4, August 30, 1993.) The

Board of Appeals report contained the initial determination of Elswick and then its own recommendation that Plaintiff's claim be pursued through the grievance procedure to the PLB. Thus, even without Elswick's testimony, the Board of Appeals would have been aware of the UTU Board of Appeal's opinion that Plaintiff deserved the 30 shares of stock. The UTU therefore did not breach its duty of hair representation by including Elswick's testimony.

### Fourth Cause of Action:

"CSX did collude and conspire with the Defendant UTU in violation of Plaintiff's rights under his collective bargaining agreement and the applicable federal statues. Such collusion and conspiracy caused Plaintiff to sustain the damages aforesaid."

The Sixth Circuit in *Baxter v. Railway Express Agency Inc.*, 455 F.2d 693 (6th Cir. 1972), held that if a plaintiff's action against his employer is based solely upon a cause arising out of the bargaining agreement between it and the union, the primary jurisdiction for resolution of the dispute is the NRAB. *Id.* at 697 *citing Czosek v. O'Mara*, 397 U.S. 25, 30, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). However, if a plaintiff relies upon a claim that the union, by conspiracy with the employer, fails to fairly represent the plaintiff, the plaintiff could enter the District Court to indicate his right to fair representation *Id.* Each of these contingencies is addressed Therefore, whether Plaintiff's collusion and conspiracy claim is, in actuality, based solely on the collective bargaining agreement or a breach of the duty of fair representation claim against the Union, either claim would fail for the reasons previously stated in this opinion.

### CONCLUSION

Therefore, Defendants' Motions for Summary Judgment (Dkt. 31, 40) are hereby **GRANTED.** Consequently, Plaintiff's Motion for an Order denying Defendants' Motion for Summary Judgment (Dkt.# 34) is **DENIED.**

**IT IS SO ORDERED.**