Triantafyllos KOTAKIS, Petitioner-Plaintiff-Appellant,

v.

ELGIN, JOLIET & EASTERN RAILWAY CO., Respondent-Defendant-Appellee.

No. 74–1558.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1975.

Decided July 11, 1975.

Certiorari Denied Dec. 8, 1975. See 96 S.Ct. 451.

Peter N. Apostal, Chicago, Ill., for appellant.

W. Gerald Thursby and John V. Ryan, III, Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff immigrated to this country from Greece during World War II. He was employed as a welder by the defendant from 1956 until October 1, 1970. On that day, he was to begin work as a grinder for defendant, a wholly owned subsidiary of United States Steel Corporation.

On the afternoon of September 30, plaintiff was riding in the automobile of a fellow employee, Steve Krinakis, al-

legedly to return certain welding equipment to defendant's welding shop. Krinakis' car became overheated. While the car was cooling off at the side of the road, the men picked up from the edge of the road or adjacent weeds a large brass bearing that had evidently come from the Gary Works of United States Steel Corporation. That company's security guards intercepted the act and began to interrogate the two railroad employees. Assertedly because of difficulties with the English language, plaintiff left the scene in order to find a Greek-American to act as interpreter for himself and Krinakis. When plaintiff returned to the scene about ten minutes later without finding an interpreter, Krinakis and the security guards had left, so that plaintiff went home. He asked for and failed to receive permission to take the next day off.

On October 1, plaintiff and Krinakis were told to report to the office of R. V. Dangremond, the defendant's Division Engineer, concerning charges of attempted theft of company property. They appeared before Dangremond at 10:00 a. m. Welding Supervisor Lenhardt and Assistant Track Supervisor Vorgias were also present. Vorgias acted as interpreter.

According to plaintiff, Dangremond advised him and Krinakis that disciplinary charges would be brought against them unless they chose to resign. Plaintiff maintains that they were also threatened with criminal prosecution. At the conclusion of the meeting, the plaintiff and Krinakis signed letters of resignation.

The company representative's version of the crucial conversation differs somewhat from plaintiff's. According to R. V. Dangremond, the Division Engineer, plaintiff and Krinakis were specifically told:

"that a hearing concerning the incident would be held, or if they preferred to avoid the possibility of disciplinary action appearing on their personal record they may resign. To insure that they understood, I had Mr. Vorgias repeat my statement in Greek, and again both men indicated that they chose to resign. Resignations were prepared and before they were signed I again asked them in English if they were sure this was what they wanted to do. Each answered in the affirmative to me as well as to Mr. Vorgias who repeated my statement in Greek. Mr. Kotakis and the other individual involved chose to resign voluntarily rather than face a hearing concerning their actions on September 30, 1970." (Plaintiff's Exhibit A–2).

Plaintiff subsequently sought reinstatement. When this was denied, plaintiff's labor union, the Brotherhood of Maintenance of Way Employees, prosecuted a grievance on defendant's property[1] on his behalf. The union argued that plaintiff's resignation was obtained by duress and requested appropriate relief. On May 20, 1971, defendant's Director of Labor Relations denied the claim.

On February 18, 1972, plaintiff's union filed a claim on his behalf with the Third Division of the National Railroad Adjustment Board, repeating the arguments made during the grievance proceeding. The union also alleged that the railroad violated Rules 21(a) and 59(b) of the applicable collective bargaining agreement.[2] To support plaintiff's claim

---

1. Proceedings "on the property" describes the prosecution of grievances by an employee and his union before the company officers, without a third party. The quoted phrase is used to distinguish such proceedings from those which take place before the members of the National Railroad Adjustment Board.

2. Rule 21(a) provides:

"An employee in the service thirty calendar days or more will not be disciplined or dismissed without first being given a fair and impartial hearing before an officer superior in rank to the officer preferring charges."

Rule 59(b) provides:

"The right of any employee to have a duly authorized representative of the Brotherhood of Maintenance of Way Employees represent him in the handling of grievances under the recognized interpretation placed upon the schedule by officials of the railroad and the general committee is conceded."

of a coerced resignation, the union relied on the affidavits of plaintiff and Krinakis which were submitted in the grievance proceedings.

As frequently happens, the ten-man Third Division of the National Railroad Adjustment Board was deadlocked, so that the matter was submitted to Irwin M. Lieberman as referee pursuant to Section 3 First (1) of the Railway Labor Act (45 U.S.C. § 153 First (1). In deciding the controversy in favor of the defendant, the referee held that Rule 59(b) was not violated because it required no affirmative action by the carrier to secure a representative and because plaintiff made no request for representation at the October 1st meeting. The referee also held that Rule 21(a) had not been violated because it requires a hearing only when discipline or dismissal is imposed by the company and not when an employee resigns. The referee concluded that except for the "unsupported statement" of plaintiff, there was nothing in the record to convince him that the resignations were obtained through the use of coercion and duress. Therefore, the claim was denied by the Adjustment Board.

In 1971, plaintiff filed a complaint against defendant in the district court claiming that he had been discharged without good cause in violation of the collective bargaining agreement between defendant railroad and his union. On May 23, 1973, that suit was dismissed for want of prosecution.

In August 1973, plaintiff filed the present action seeking, *inter alia,* review of the Adjustment Board award pursuant to Section 3 First (q) of the Railway Labor Act (45 U.S.C. § 153 First (q)). Count III of the complaint went beyond the review proceeding in alleging a conspiracy between the union and the railroad to deprive plaintiff of his right to proper representation by the union. On December 7, 1973, the district court dismissed Count III as against defendant

railroad, stating that it was barred by the dismissal of the prior case for want of prosecution.

On March 29, 1974, the district court granted defendant's motion for summary judgment with respect to Count I, which constituted plaintiff's petition for review of the Adjustment Board decision. See 45 U.S.C. § 153 First (q). Plaintiff had there alleged want of due process before the Adjustment Board, which he contended amounted to a failure of that Board "to conform, or confine itself to matters within the scope of the [Third] division's jurisdiction." The minute order accompanying the district court's ruling stated:

> "The Court finds that the Record shows no deprivation of due process, as has been pleaded in Count I of the Petition for Review and Complaint. Further, the Court finds that the Award did conform and confine itself to matters within the scope of the Third Division's jurisdiction. Finally, this Court finds that the Record does not show any statutory grounds for reversing and/or for remanding that Award."

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the district court entered a final judgment for the railroad with respect to Counts I and III, resulting in this appeal.[3] We affirm.

## I. Dismissal of Count I, the Petition for Review

In Count I of this complaint, plaintiff complained that the Third Division of the National Railroad Adjustment Board deprived him of due process of law because it "arbitrarily and capriciously denied petitioner's claim without recognizing substantial evidence in the record * * *." The burden of proof allegedly applied by the referee was also attacked. The award was said to be reversible as outside the Third Division's jurisdiction because "it is without foundation in rea-

---

**3.** Count III was not dismissed as against plaintiff's union. Count II, claiming that the union breached its statutory duty of fair representa-

tion of plaintiff, was not involved in the Rule 54(b) disposition and therefore also still pends in the district court.

son or fact [and] wholly baseless and completely without reason."

In the opinion of the Board, Referee Lieberman properly observed that the crux of the matter was whether plaintiff's resignation was obtained through coercion and duress. Consequently, he decided that petitioner's guilt or innocence with respect to the alleged theft was immaterial. After excerpting Division Engineer Dangremond's, plaintiff's fellow-employee Krinakis' and plaintiff's own reports of the October 1st conversations in Dangremond's office, the Referee stated:

"In our opinion, it is quite probable that all three versions of the conversation are correct; the employees' versions represent what they 'heard' that morning, under all the circumstances. The version by Claimant above is the only evidence presented to support the claim of coercion."

The referee then quoted from Third Division Award No. 18476 (1971), where an employee of the Union Pacific Railroad Company was attempting to rescind a written resignation that he signed rather than face a disciplinary charge. There the Board stated that the burden of proof rested with the employee's union to show "beyond a reasonable doubt" that he was coerced into signing a letter of resignation under duress, and that this cannot be established by inference or by the employer's threat of disciplinary action as an alternative to resignation. After thus quoting from Award No. 18476, Referee Lieberman concluded that nothing in the record indicated that petitioner's resignation was obtained through the use of coercion and duress except his unsupported statement. Therefore, the Referee was unpersuaded and the claim was denied.

In considering the judicial attack on this Third Division award, Section 3 First (q) of the Railway Labor Act is controlling. In pertinent part, it provides:

"On such [district court] review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order * * *" (45 U.S.C. § 153 First (q)).

This statute shows that the findings of the Board are conclusive except in three instances. Count I of the complaint does not charge that the Third Division failed to comply with the requirements of the Railway Labor Act or that there was fraud or corruption by a member of the Third Division. Instead, plaintiff argues that the Board's order was not confined to matters within the scope of the Third Division's jurisdiction. We disagree.

■■ While plaintiff's complaint and his briefs in this Court seem to have muddled the two issues somewhat, we take his attack on the Board's refusal to allow his claim to be twofold: (1) the proceedings before the Board were lacking due process and (2) the Board's decision was "without foundation in reason or in fact." Lack of due process is recognized as a legitimate ground for objection. See *Union Pacific Railroad Co.* v. *Price,* 360 U.S. 601, 616, 79 S.Ct. 1351, 3 L.Ed.2d 1460; *Edwards* v. *St. Louis-San Francisco Railway Co.,* 361 F.2d 946, 953–954 (7th Cir. 1966). There is also support for plaintiff's contention that the Board's order can be reversed by the courts if it is found to be "actually and undisputedly without foundation in reason or fact" (*Laday* v. *Chicago, Milwaukee, St. Paul, and Pacific Railroad Co.,* 422 F.2d 1168, 1171 (7th Cir. 1970); *Brotherhood of Railroad Trainmen* v. *Central of Georgia Railway Co.,* 415 F.2d 403, 414 (5th Cir. 1969)) or "wholly baseless and without reason" (*Gunther* v. *San Diego & Arizona Eastern Railway Co.,* 382 U.S. 257, 261, 86 S.Ct. 368, 15 L.Ed.2d 308). If a Board decision can be so characterized, it is viewed as outside the "matters within the scope of the di-

vision's jurisdiction" under 45 U.S.C. § 153 First (q). The parties take issue over which of the two phrases is the proper standard, but that question is immaterial to a disposition of this case because, when examined under either of the essentially equivalent standards, the Board's decision must be upheld.

On analysis, plaintiff is essentially asserting that the Third Division disregarded evidence submitted to it or misinterpreted that evidence and misinterpreted the provisions of the labor contract. However, in *Gunther v. San Diego & Arizona Eastern Ry. Co., supra* at 263, 86 S.Ct. 368, the Supreme Court held that the courts may not open up the Board's finding on the merits because Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board. Likewise, this Court has already determined that a litigant cannot complain merely that an Adjustment Board award was based on insufficient evidence. *Edwards v. St. Louis-San Francisco Railway Co., supra* at 952. *Gunther* and *Edwards* also make it clear that the interpretation of railroad collective bargaining agreements is for the Adjustment Board rather than the courts. 382 U.S. at 261–262, 86 S.Ct. 368 and 361 F.2d at 952. In view of these interpretations of the courts' power of review under Section 3 First (q), we cannot sustain plaintiff's attack on the merits of the award.

### A. Due Process Based Attack

■ Plaintiff contends that the Referee's decision that Rules 21(a) and 59(b), *supra* n. 2, of the collective bargaining agreement had not been violated was clearly erroneous and deprived plaintiff of due process.[4] Under *Gunther v. San Diego & Arizona Eastern Ry. Co., supra,* at 261–262, 86 S.Ct. 368, and *Edwards v. St. Louis-San Francisco Railway Co., supra,* at 952, the interpretation of railroad

collective bargaining agreements is for the Adjustment Board rather than the courts. Furthermore, the Referee's interpretation of the two clauses was clearly reasonable. Rule 21(a) does not apply to resignations. In asserting its application in his brief, plaintiff begs the question by assuming the resignation was coerced and therefore characterizing the termination of plaintiff as an employer disciplinary action to which Rule 21(a) should apply. Neither does Rule 59(b) apply to the October 1st office conference, for the grievance machinery under the collective bargaining agreement had not yet commenced, the employer had no obligation to suggest representation, and plaintiff had not sought to have a union representative present on that occasion. He was represented by his union when the grievance was processed on the property and before the Adjustment Board. Plaintiff's attempt to convert these two rulings, which are clearly within the exclusive power of the Adjustment Board, into violations of due process because of his disagreements therewith is rejected by this Court.

### B. "Without Foundation in Reason or in Fact" Argument

■ Plaintiff contends that the Board ignored evidence in support of appellant's claim and that this evidence of coercion was unrebutted by any evidence of record. As noted earlier in this opinion, there were differing accounts of the crucial conversation in the record and the Referee found plaintiff's evidence of coercion unpersuasive. This is exactly the type of determination that Congress intended to be left to the Adjustment Board without judicial review. On the record in this case, it is impossible for us to say that the Board's decision was either "actually and undisputedly without foundation in reason or in fact" or "wholly baseless and without reason"

---

**4.** In both plaintiff's due process and "without foundation in reason or fact" attacks on the Board's decision, he first asserts that the Board was "clearly erroneous." Such a characterization adds nothing to plaintiff's two bases of attack, since it is clear that a court cannot employ the "clearly erroneous" standard in reviewing Adjustment Board awards. See 45 U.S.C. § 153 First (q) quoted *supra.*

and thus outside the matter of the Division's jurisdiction. See discussion *supra* at 574. Consequently, this claim of plaintiff must fail.

■ In his final attack under the "without foundation" argument, plaintiff asserts that the Referee wrongly chose to apply the beyond a reasonable doubt standard of proof.[5] It is unclear from his opinion that the Referee actually employed that standard, but, as already noted, this would not be an unprecedented act. Furthermore, assuming that the preponderance of evidence test was not but should have been applied, our study of the record before the Board satisfies us that the Referee could properly find that plaintiff did not prove coercion. Congress clearly intended that the awards of the Adjustment Board be as unassailable as those of an arbitrator. The Board was expected to exercise its expertise in matters of railroad labor disputes, and Congress did not intend for the courts to maintain a check on each procedural and substantive ruling of the Board. Nowhere in the Railway Labor Act is the Board confined to a particular standard of proof. Therefore, it would have been improper for the district court on the facts before it in this case to have invaded the province of the Board on the possibility that a burden greater than plaintiff desires was imposed.

## C. The Board's Alleged Failure to Give Notice to Plaintiff

■ As to plaintiff's contention that the Adjustment Board award was a nullity for failure to provide him written notice of the Board's hearings under Section 3 First (j) of the Act (45 U.S.C. § 153 First (j)),[6] since Count I of the complaint does not attack the failure of the Board to give such notice and no such argument was made in the district court, it is not properly before us. Moreover, the record discloses that plaintiff knew his grievance had been submitted to the Adjustment Board and that he had authorized the union to represent him there. That satisfies the notice requirement. *Elgin, Joliet & Eastern Railway Co.* v. *Burley*, 327 U.S. 661, 666–667, 66 S.Ct. 721, 90 L.Ed. 928.

## II. Dismissal of Count III, the Conspiracy Claim

■ Count III of the complaint alleges a conspiracy between the defendant and the union to breach the union's statutory duty of fair representation of the plaintiff and to deprive him of his rights under the collective bargaining agreement. Although not alleging a conspiracy, parallel allegations were made against the railroad alone in a 1971 suit entitled *Kotakis* v. *Elgin, Joliet & Eastern Railway Co.*, No. 71 C 2184 (N.D.Ill.) There the railroad was accused of having renewed its "decision to wrongfully discharge Plaintiff" on May 20, 1971, after plaintiff had pursued his grievance on the property. Apparently this lawsuit "forced" the union to represent the plaintiff before the Adjustment Board commencing on February 18, 1972.[7] Consequently, plaintiff did not pursue the 1971 suit and it was dismissed for want of prosecution on March 17, 1973. Under Rule 41(b) of the Federal Rules of Civil Procedure, this dismissal operated as an adjudication on the merits of the 1971 suit. Since Count III of the instant

---

5. Plaintiff relies on Section 556(d) of the Administrative Procedure Act (5 U.S.C. § 556(d)) as to the proper standard of proof. Except as to public information, this Act does not apply to Adjustment Board proceedings. See 5 U.S.C. § 551(1)(E); *Brotherhood of Locomotive Firemen and Enginemen* v. *Chicago, Burlington & Quincy R. Co.*, 225 F.Supp. 11, 18 (D.D.C.1964), affirmed *per curiam*, 118 U.S. App.D.C. 100, 331 F.2d 1020 (1964), certiorari denied, 377 U.S. 918, 84 S.Ct. 1181, 12 L.Ed.2d 187; *Stranford* v. *Pennsylvania R. Co.*, 155 F.Supp. 680, 688–689 (D.N.J.1957).

6. Section 3 First (j) provides:
   "Parties may be heard either in person, by counsel, or by other representative as they may respectively elect, and the several divisions shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."

7. See paragraph 39(b) of Count I.

suit challenges essentially the same conduct by the defendant as was challenged in the earlier suit and seeks essentially the same remedy (only reinstatement is no longer sought), the adjudication on the merits unfavorable to the plaintiff of the first suit precludes a favorable decision here. Plaintiff will not be allowed to relitigate the propriety of the discharge, which is the only participation alleged as to the defendant in the conspiracy and which was the central thrust of the earlier suit. Consequently, the district court was correct in holding that Count III against the railroad was "barred by the order dismissing for want of prosecution the prior case filed by petitioner against the Railroad complaining of his discharge in Case No. 71 C 2184."

Judgment affirmed.