## UNITED TRANSPORTATION UNION (C) AND (T) and Robert Bannon, Petitioners,

v.

## UNION PACIFIC RAILROAD COMPANY, a corporation, Respondent.

### No. C83–441–K.

United States District Court, D. Wyoming.

Sept. 20, 1984.

---

Charles A. Collins, Minneapolis, Minn., and Vincent A. Ross, Cheyenne, Wyo., for petitioners.

Frederick G. Loomis, Cheyenne, Wyo., for respondent.

## ORDER AFFIRMING AWARD NO. 1 OF PUBLIC LAW BOARD 3282 (WITH FINDINGS)

KERR, District Judge.

The above-entitled matter having come on regularly for hearing before the court, petitioners appearing by and through their attorneys, Charles A. Collins and Vincent Ross, and Respondent appearing by and through its attorney, Frederick G. Loomis, and the Court having heard the arguments of counsel and having carefully considered the briefs filed herein, and being fully advised in the premises, FINDS:

This action arises as an appeal from the Decision of Public Law Board 3282, Award No. 1, dated July 7, 1983, pursuant to the provisions of 45 U.S.C. § 153 First (q). The petitioner requests that the award which affirmed his discharge be set aside and petitioner be reinstated with back pay together with costs and attorney's fees. The relevant facts are as follows:

The petitioner, Robert Bannon, is a member of the United Transportation Union (U.T.U.) and was employed by the Union Pacific Railroad (U.P.) until his discharge in May, 1981.

Bannon was arrested on December 16, 1980 on charges of one count of possession of a controlled substance with intent to deliver and two counts of possession of a controlled substance. Bannon was off

duty at the time and was not on any U.P. property.

Bannon entered a guilty plea pursuant to W.S. § 35–7–1037, misdemeanor possession of a controlled substance, and all other charges were dropped. Bannon was fined and sentenced but the sentence was suspended and petitioner was placed on one year probation. Wyoming Statute § 35–7–1037 allows for deferred prosecution, whereupon by Bannon's maintaining a good record and complying with his probation, the record of his arrest and conviction was expunged. There was no evidence as to whether any publicity occurred with respect to the arrest.

On April 20, 1981, the U.P. served Bannon with notice of a hearing and appearance for investigation scheduled for April 24, 1981. The notice charged that Bannon's arrest and subsequent guilty plea was "conduct unbecoming to an employee of the Union Pacific Railroad and in violation of General Rules B and E, and Operating Rule 700."

These rules provide:

GENERAL RULES

B. Employees must be conversant with and obey the rules and special instructions. If in doubt as to their meaning, they must apply to proper authority of the railroad for an explanation.

E. Employees must render every assistance in their power in carrying out the rules and special instructions, and must report any violation thereof to the proper office.

OPERATING RULE 700

Employees will not be retained in the service who are careless of the safety of themselves or others, insubordinate, dishonest, immoral, quarrelsome or otherwise vicious, or who do not conduct themselves in such a manner that the railroad will not be subjected to criticism and loss of good will, or who do not meet their personal obligations.

At the hearing, the only adverse testimony to Bannon was that of S.D. Whited, Special Agent, who testified to the arrest, charges, plea, and sentence and stated that such charges were a matter of public record.

By letter dated May 1, 1981, R.D. Jones, Trainmaster, who presided at the hearing, notified Bannon that he was dismissed from the service of the company for violating General Rules B, E, and Operating Rule 700.

This decision was appealed by the U.T.U. local chairman to R.L. Green, Superintendent for Wyoming division of U.P.R.R., on May 18, 1981. This request for reinstatement was declined by letter dated June 5, 1981.

Another request for reinstatement was made by letter of June 29, 1981 to the general manager of U.P.R.R. in Omaha, Nebraska. This request was also denied, subject to the manager receiving additional information. The parties continued to correspond until finally, at the parties' request, a Public Law Board was established to hear this dispute as well as others.

Public Law Board—3282 was created by agreement between Union Pacific Railroad Company—Eastern District and U.T.U. The Board was composed of union member C.F. Christiansen, vice president, U.T.U.; carrier member R.D. Meredith, Director of Labor Relations—Eastern District; and the neutral chairperson was David H. Brown, whose name was duly submitted to the National Mediation Board for appointment as required by 45 U.S.C. § 153 Second.

The Board, by a 2–1 decision, issued Award No. 1 dated July 7, 1983, from which Bannon appeals.

The relevant portion of the award reads:

The organization further objects to the imprecise language of the charge, specifically because of the general nature or multifariousness of the several rules. In this we concur, and we express our disapprobation of filing shotgun charges and then finding the employee guilty on all counts. We urge the carrier to in-

struct its officers to be more precise in drawing charges and to furnish to each disciplined employee a bill of particulars which does not recite unnecessary rules. The facts in the instant case are fairly simple. Surely the claimant knew that he was doing wrong and surely it must be recognized that a carrier cannot retain in its employ either users or pushers of illicit drugs. The damage already done to this nation is apparent to all thinking people, and we shall leave leniency to lazy prosecutors and judges who are insensitive to the danger. We find that Conductor Bannan violated General Regulation 700 in that his conduct was calculated to subject the carrier to criticism and loss of goodwill.

We further find that claimant was accorded a fair and impartial investigation and that his discharge was fully warranted.

AWARD: Claim denied.

The scope of judicial review which this court may apply to this appeal from the Public Law Board is the very narrow standard applied to adjustment boards pursuant to 45 U.S.C. § 153 First (q).

This section provides in part that:

... The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division may be set aside, in whole or in part, or remanded to the division for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order....

This court is then limited to three determinations:

(1) Did the Public Law Board comply with the requirements of the chapter § 151 et seq.; or

(2) Does the order conform or confine itself to matters within the Board's jurisdiction; and,

(3) Was there any fraud or corruption on the part of any member of the Board making the decision.

This narrow scope of review is indicative of the history and purpose behind § 153. In *Union Pacific v. Sheenan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), the Court acknowledged that:

In enacting this legislation, Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. [citations omitted]. The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions. [citations omitted]. Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts. [citations omitted]. The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations.

In considering these three standards, the court is also aware that "lack of due process is recognized as a legitimate ground for objection," *Kotakis v. Elgin, Joliet & Eastern Ry.*, 520 F.2d 570, 574 (7th Cir.1975), and that a Board's decision may also be overturned "if it is found to be 'actually and undisputedly without foundation in reason or fact ... or wholly baseless and without reason.'" Such a decision is viewed as outside the scope of the Board's jurisdiction. *Kotakis, supra* at 574, 575.

The petitioner here claims that the Public Law Board's decision should be overturned even under the narrow standard of review for the following reasons:

1. That the Board acted outside its jurisdiction and that the award did not confine itself to matters within the Board's jurisdiction as the decision was an attempt to criminally punish Bannon, when "lenient prosecutors and judges" had failed in punishing Bannon;

2. That the Board acted outside its jurisdiction because the decision was without foundation in reason or fact. Operating Rule 700 requires that an employee conduct himself in a manner that will not subject the Railroad to *"criticism and loss of goodwill."* The petitioners claim, however, there was no evidence or showing at the hearing level that Union Pacific Railroad was subjected to any criticism or loss of goodwill. Additionally, the petitioners claim that without such evidence, the Board found that Bannon's conduct was *"calculated* to subject the carrier to criticism and loss of goodwill," but that the rule itself requires *"actual"* criticism and loss of goodwill.

3. That Bannon's due process rights have been violated by U.P. because the Board decision is in effect creating a new rule concerning off-duty drug use without giving the petitioner and his union the proper notice or following proper procedure. The petitioner contends that because Rule 700 contains no mention of off-duty activities, the sudden use of the rule to cover such activities constitutes a "substantial change in working conditions."

4. That the failure of the Board to promptly publish the award may have led to ex parte participation by the respondent, Union Pacific, and as such, there was fraud and corruption on the part of some of the Board members. The petitioner contends that at the very least the case should be remanded to determine the actual existence of fraud and corruption.

5. Finally, the petitioner claims that the award is improperly signed in that it does not comply with the requirements of 29 C.F.R. § 301.9 (29 C.F.R. § 301 regulates the National Railroad Adjustment Board). Section 301.9 requires that awards of the National Railroad Adjustment Board be signed and attested to by the division secretary.

In reviewing the decision of Public Law Board 3282, this court cannot express any agreement with the Board's decision to discharge Bannon, however, we feel constrained and restricted by the standard of review which must be applied. While the Board's commentary on the propensities of the prosecutorial and judicial segments of this nation is an uncalled for remark, the court does not find that the decision was an attempt by the Board to criminally prosecute Bannon, and the decision was not, therefore, outside the Board's jurisdiction. Nor was the decision outside the Board's jurisdiction as being without foundation in reason or fact. It cannot be said that the decision was "wholly baseless and without reason." While the evidence at the hearing was scant, insufficiency of evidence is not a basis for reversal. *Kotakis, supra* at 575.

This court is not at liberty to say that an interpretation of Rule 700 requires "actual" proof of criticism and loss of goodwill. The Board under 45 U.S.C. § 153 First (i) has exclusive jurisdiction to interpret collective bargaining agreements and the importance of the finality of such interpretations has already been discussed. *Union Pacific v. Sheenan, supra; Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Gunther v. San Diego & A.E. Ry.,* 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); *Union Pacific R.R. v. Price,* 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959); *Slocum v. Delaware L. & W. R.R.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); *Kotakis v. Elgin, supra.*

The fact that the Board interpreted Rule 700 to apply to off-duty conduct rather than only on-duty conduct also cannot be challenged by this court. Nor do we find that such an interpretation is violative of Bannon's due process rights. The court further finds no basis to remand this case

to determine the existence of fraud or corruption.

Finally, we note that the petitioner's claim that the award of a Public Law Board as a special board of adjustment must be signed and attested to by a division secretary of the National Railroad Adjustment Board pursuant to 29 C.F.R. § 301.9 is not a procedure which has been followed by special boards under the Act. The record itself contains several special adjustment board decisions which are not signed and attested to by a National Railroad Adjustment Board division secretary. However, these awards, including the one from which Bannon appeals, are signed by the three Board members.

The regulations applicable to special adjustment boards are found at 29 C.F.R. § 1207 et seq. Section 1207.1(c) specifically states that "provisions of section 2(a) of Public Law 89–456 [§ 153 First (m)] apply also to the awards of Public Law Boards created under this Act, ..." Subsection (m) requires the awards to be in writing and copies to be furnished to the respective parties in the dispute. It also states that such awards shall be final and binding upon the parties.

It is not clear, however, from the special adjustment board regulations that the signature and attestation of the division secretary is required on special adjustment awards. A requirement such as this might in effect create another unspecified step in the special adjustment board process or even defeat the purpose of the establishment of these special boards to deal with disputes that might otherwise have been referable to the National Railroad Adjustment Board.

■ Even if this requirement were to apply to Public Law Board awards, the court does not find that the lack of the division secretary's signature is prejudicial to Bannon.

Therefore, this court finds that:

(1) the Board complied with the requirements of the Act;

(2) the award is confined to matters within the Board's jurisdiction; and

(3) there was no fraud or corruption on the part of any Board members.

NOW, THEREFORE, BASED ON THE FOREGOING REASONS, IT IS

ORDERED that Award No. 1 of Public Law Board 3282 be, and the same is, hereby affirmed.