**Ellen L. BATZEL, Plaintiff,**

v.

**Robert SMITH, et al., Defendants.**

**No. CV 00–9590 SVW (AJWx).**

United States District Court,
C.D. California.

April 19, 2005.

Ellen L. Batzel, Marina Del Rey, CA, pro se.

Howard S. Fredman, Howard S. Fredman Law Offices, Los Angeles, CA, M. Joey Lynch, M. Joey Lynch Law Offices, Beverly Hills, CA, for Plaintiff.

Robert Smith, Christiansburg, VA, pro se.

David D. Johnson, Eric D. Brown, Pamela S. Palmer, Steven T. Chinowsky, Latham & Watkins, Stephen J. Newman, Stroock, Stroock & Lavan, Robert P. Long, Kinkle, Rodiger & Spriggs, Los Angeles, CA, for Defendants.

## AMENDED ORDER GRANTING DEFENDANT TON CREMERS' MOTION FOR SUMMARY JUDGMENT.

WILSON, District Judge.

## I. INTRODUCTION

Defendant Ton Cremers has filed a Motion for Summary Judgment, alleging that Plaintiff's action in this Court is barred by the doctrine of res judicata as a result of the Western District of North Carolina's dismissal of Plaintiff's earlier-filed identical action for failure to prosecute. In addition, pursuant to this Court's order, Defendant Cremers has filed an Amended Special Motion to Strike, which responds to the Ninth Circuit's order vacating and remanding Defendant Cremers' anti-SLAPP motion to this Court. For the reasons discussed in this Order, Defendant Cremers' Motion for Summary Judgment is GRANTED. As such, the Court declines to reach the merits of Defendant Cremers' anti-SLAPP motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Factual Background

MSN is an internet website that publishes newsletters concerning art and museum security issues. It is operated out of the Netherlands. Defendant Ton Cremers ("Defendant" or "Cremers") is the creator and sole operator of MSN. Cremers both receives submissions from others and composes his own content for the MSN newsletter. Individuals can subscribe to the newsletter via the MSN website. Cremers maintains a subscriber list to whom he e-mails newsletters and invitations to view the website.

Defendant Bob Smith ("Smith") painted Plaintiff Ellen Batzel's ("Plaintiff's") house in North Carolina. Plaintiff is an entertainment lawyer with art industry business and a number of Jewish clients in California. According to Plaintiff's complaint, Smith asked Plaintiff to take a script to her clients to review. When Plaintiff declined Smith's request, Smith allegedly became angry with Plaintiff.

Thereafter, Smith located the MSN website and sent an e-mail to Cremers. The e-mail indicated that he, Smith, had been working in the home of a lawyer who claimed to be the granddaughter of Hein-

rich Himler and who bragged about having an art collection stolen from Jewish families by the Nazis. Cremers published the e-mail and related updates on five occasions in September of 1999, allegedly without investigating the veracity of the information received from Smith. The tenor of subsequent publications of this information suggested that MSN itself had investigated the allegations.

Plaintiff learned of the publication of this information from an anonymous emailer on January 4, 2000. She contacted MSN and Defendant Mosler, Inc., MSN's corporate sponsor, and requested a retraction. None was published. Cremers did not advise people who inquired about the Batzel information that the allegations were false. As a result of the publication of Smith's story, Plaintiff alleges that she lost several prominent clients in California and also became the subject of an investigation by the North Carolina Bar.

### B. Procedural Background

#### 1. The North Carolina Action

On September 7, 2000, Plaintiff filed two identical actions against the four Defendants in this case—one in United States District Court for the Western District of North Carolina, and one in this Court. The action in the Western District of North Carolina was filed a few hours earlier than the action in this Court. In both cases, the sole basis for federal jurisdiction was diversity.

Plaintiff served Defendants Mosler, Inc. and Smith in the action in this Court. Defendant Mosler, Inc. filed its answer and cross-claim in this Court on October 3, 2000, and Defendant Smith filed his answer in this Court on October 30, 2000. Subsequently, on November 14, 2000, Plaintiff voluntarily dismissed Defendants Mosler, Inc. and Smith from the action in the Western District of North Carolina.

On December 22, 2000, Plaintiff served Defendants Cremers and the Netherlands Museums Association with only the complaint in the action before this Court in the Netherlands pursuant to the requirements of the Hague Convention.

On January 29, 2001, the Clerk for the North Carolina District Court sent Plaintiff a notice stating that Plaintiff had not served Cremers or the Netherlands Museums Association, and advising Plaintiff of the consequences of non-service under Rule 4(m). In response to this order, on February 21, 2001, Plaintiff submitted a declaration in the North Carolina court, in which she stated that service had recently been effected in the identical California action, stated that Defendants Cremers and the Netherlands Museum Association would shortly be required to challenge or submit to the jurisdiction of the California court, and requested that the North Carolina court refrain from dismissing the action for sixty days. As such, on February 23, 2001, the North Carolina court issued an order requiring Plaintiff to effect service on Cremers within sixty days or show why service had not been completed. The order stated that if Plaintiff failed to comply, the North Carolina case would be dismissed for failure to prosecute.

Plaintiff never served Defendants Cremers and the Netherlands Museums Association in the North Carolina action, and on April 27, 2001, the North Carolina court issued an order dismissing Plaintiff's case for failure to prosecute. Defendant Cremers and his counsel were not made aware of the North Carolina action until early 2004.

#### 2. The Instant Action

On March 21, 2001, this Court granted summary judgment in favor of Defendant Mosler, and on June 5, 2001, the Court

denied Plaintiff's motion for reconsideration of that ruling. On August 6, 2001, the Court entered judgment in favor of Defendant Mosler pursuant to Federal Rule of Civil Procedure 54(b). Further, on April 19, 2001, default was entered as to Defendant Netherlands Museums Association.

On March 26, 2001, Defendant Cremers filed a motion in this Court to dismiss for lack of personal jurisdiction or on forum non-conveniens grounds, and a special motion to strike all claims. This Court heard oral argument on Defendant Cremers' motions on April 23, 2001. On June 5, 2001, this Court issued an order denying Defendant Cremers' motion to dismiss for lack of personal jurisdiction or on forum non-conveniens grounds. On July 27, 2001, the Court issued an order denying Cremers' anti-SLAPP motion to strike Plaintiff's claims, on the ground that Plaintiff was not a "provider or user of an interactive computer service," as required for preemption by the Telecommunications Act.

Defendant Cremers appealed this Court's rulings regarding personal jurisdiction and his anti-SLAPP motion to the United States Court of Appeals for the Ninth Circuit. In an order dated June 24, 2003, the Ninth Circuit dismissed Defendant Cremers' appeal of the Court's ruling regarding personal jurisdiction as untimely. *Batzel v. Smith*, 333 F.3d 1018, 1023 (9th Cir.2003). In the same order, the Ninth Circuit vacated and remanded the portion of this Court's ruling in which this Court denied Defendant Cremers' anti-SLAPP motion. *Id.* at 1036. The Ninth Circuit held that, for purposes of the Telecommunications Act, Defendant Cremers was a "provider or user of an interactive computer service," and Defendant Smith was an "information content provider," so § 230(c)(1) of the Telecommunications Act could apply to immunize Defendant Cremers from liability. *Id.* at 1030–31. The Ninth Circuit went on to hold that

> a service provider or user is immune from liability under § 230(c)(1) when a third person or entity that created or developed the information in question furnished it to the provider or user under circumstances in which a reasonable person in the position of the service provider or user would conclude that the information was provided for publication on the Internet or other "interactive computer service."

*Id.* at 1034. As such, the Ninth Circuit remanded the matter to this Court "for further proceedings to develop the facts under this newly announced standard and to evaluate what Cremers should have reasonably concluded at the time he received Smith's email." *Id.* at 1035.

On September 29, 2004, Defendant Cremers filed his Amended Special Motion to Strike, pursuant to the Court's order. Further, on November 29, 2004, Defendant Cremers filed a Motion for Summary Judgment, alleging that Plaintiff's suit before this Court is barred by the doctrine of res judicata as a result of the North Carolina court's dismissal of Plaintiff's identical case for failure to prosecute.

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing ver-

sions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–34, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party—over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001) (the nonmoving party must offer specific evidence from which a reasonable jury could return a verdict in its favor).

### B. Res Judicata

#### 1. Choice of Law

In *Semtek International Incorporated v. Lockheed Martin Corporation*, the Supreme Court stated that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (citations omitted). The Court went on to adopt, "as the federally prescribed rule of decision [in such cases], the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* (citations omitted).

In *Semtek*, the plaintiff originally filed its complaint in California state court, and the defendant removed the case to federal court on the basis of diversity. *Id.* at 499, 121 S.Ct. 1021. The Central District of California dismissed the plaintiff's claims " 'in [their] entirety on the merits and with prejudice,' " as barred by California's two-year statute of limitations. *Id.* The plaintiff also brought suit in state court in Maryland, "alleging the same causes of action, which were not time barred under Maryland's 3–year statute of limitations." *Id.* The Maryland state court granted the defendant's motion to dismiss on the ground of res judicata. *Id.* at 500, 121 S.Ct. 1021.

The Supreme Court held that "the claim-preclusive effect of the California federal court's dismissal 'upon the merits' of [the plaintiff's] action on statute-of-limitations grounds is governed by a federal rule that in turn incorporates California's law of claim preclusion," so in order to determine whether the Central District of California's dismissal "necessarily precluded the bringing of this action in the Maryland courts," the Maryland court was to look to California's law of claim preclusion. *Id.* at 509, 121 S.Ct. 1021. In reaching this holding, the Court stated that "nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court." *Id.* at 508, 121 S.Ct. 1021. In addition, the Court stated that "any other rule would produce the sort of 'forum-shopping ... and ... inequitable administration of the laws' that *Erie* seeks to avoid, since filing in, or removing to, federal court would be encouraged by the divergent effects that the

litigants would anticipate from likely grounds of dismissal." *Id.* at 508–09, 121 S.Ct. 1021 (citing *Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Guaranty Trust Co. v. York,* 326 U.S. 326 U.S. 99, 109–110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)) (ellipsis in original).

Similarly, courts applying *Semtek* have held that in determining whether a judgment by a federal court sitting in diversity has res judicata effect, a subsequent court must look to the state res judicata rules of the state in which the court that made the judgment sits. *See, e.g., Gulf Mach. Sales & Eng'g v. Heublein, Inc.,* 211 F.Supp.2d 1357, 1360 (M.D.Fla.2002) (applying Mississippi law to determine the preclusive effect of "the Mississippi federal district court's statute-of-limitations dismissal of the contract-related claims"); *Smolensky v. McDaniel,* 144 F.Supp.2d 611, 614–15 (E.D.La.2001) (stating that "when a court must decide the preclusive effect of a judgment rendered by a federal court in a diversity case, the federal common law of res judicata requires the deciding court to adopt the claim-preclusive rules *of the forum state* that provided the substantive rules of decision in the first action") (emphasis in original); *Marshall v. Inn on Madeline Island,* 631 N.W.2d 113, 119 (Minn.App.2001) (holding that under *Semtek,* Wisconsin law applied to determine whether previous Wisconsin judgment had res judicata effect on subsequent Minnesota action).

In the instant case, Plaintiff initially filed an action in the Western District of North Carolina, in which the court's only basis for jurisdiction was diversity of citizenship, which was dismissed for lack of prosecution. Under the holding of *Semtek,* in order to determine the res judicata effect of the North Carolina dismissal on Plaintiff's identical action presently before

this Court, the Court must therefore apply the res judicata rules of North Carolina.

### 2. North Carolina Law of Res Judicata

The Court of Appeals of North Carolina has stated that "[u]nder the doctrine of res judicata, a final judgment on the merits by a court of competent jurisdiction is conclusive as to rights, questions and facts in issue." *Chrisalis Properties, Inc. v. Separate Quarters, Inc.,* 101 N.C.App. 81, 398 S.E.2d 628, 631 (1990). "Such judgment bars all subsequent actions involving the same issues and the same parties or those in privity with them." *Id.* (citing *First Union Nat'l Bank v. Richards,* 90 N.C.App. 650, 369 S.E.2d 620, 621 (1988); *Shelton v. Fairley,* 72 N.C.App. 1, 323 S.E.2d 410, 414 (1984)). It is undisputed that the instant case involves the same issues and the same parties as the case filed by Plaintiff in North Carolina. Therefore, the doctrine of res judicata will apply to bar the instant action if the Western District of North Carolina's dismissal of Plaintiff's case due to failure to prosecute constitutes "a final judgment on the merits" for purposes of North Carolina law.

■ In North Carolina, when an action is involuntarily dismissed for failure to prosecute under Rule 41(b) of the North Carolina Rules of Civil Procedure, this "[g]enerally ... operates as an adjudication on the merits and ends the lawsuit," unless the trial court "specifically orders the dismissal to be without prejudice." *Melton v. Stamm,* 138 N.C.App. 314, 530 S.E.2d 622, 624 (2000) (citing *Barnes v. McGee,* 21 N.C.App. 287, 204 S.E.2d 203, 205 (1974)). In this case, the North Carolina court did not specify that the dismissal was to be without prejudice, so under North Carolina law, the dismissal was "on the merits." However, as pointed out by

the Court in *Semtek*, "it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclusive effect," and the Court in the instant case must determine whether North Carolina courts actually give preclusive effect to involuntary dismissals based on failure to prosecute. *See Semtek*, 531 U.S. at 502, 121 S.Ct. 1021.

The Court's research revealed no cases precisely on point, in which a North Carolina court held that a previous involuntary dismissal for failure to prosecute barred subsequent litigation of the same suit, but an analogous case is instructive. In *Wrenn v. Maria Parham Hospital, Inc.*, the plaintiff filed a wrongful death suit against a doctor and a hospital. 135 N.C.App. 672, 522 S.E.2d 789 (1999). In the original suit, the plaintiff voluntarily dismissed her claims against the hospital "without prejudice" and voluntarily dismissed her claims against the doctor "with prejudice." *Id.* at 790. The court held that her subsequent suit against the hospital was barred because it was based on a respondeat superior theory based on the actions of the doctor, who had been voluntarily dismissed from the original suit "with prejudice." *Id.* at 793–94. ("Such a dismissal is with prejudice, and it operates as a dismissal on the merits and precludes subsequent litigation in the same manner as if the action had been prosecuted to a full adjudication against the plaintiff") (citing *Graham v. Hardee's Food Sys.*, 121 N.C.App. 382, 465 S.E.2d 558, 559–60

(1996); *Barnes v. McGee*, 21 N.C.App. 287, 204 S.E.2d 203, 205 (1974)).

In addition, there are two cases in which a North Carolina court refused to dismiss a case on the ground of res judicata where the earlier case was dismissed for failure to prosecute. In both cases, the court assumed that dismissals for failure to prosecute in general have res judicata effect and bar subsequent litigation, but another defect prevented the earlier dismissal for failure to prosecute from having res judicata effect. First, in *Girard Trust Bank v. Belk*, the Court of Appeals of North Carolina declined to give res judicata effect to an earlier dismissal for failure to prosecute where the parties in the second suit were different from the parties in the first suit, and were not in privity with the parties in the first suit. 41 N.C.App. 328, 255 S.E.2d 430, 438–39 (1979). The court in *Girard Trust Bank* relied upon the Seventh Circuit's opinion in *Kotakis v. Elgin, Joliet & Eastern Railway Co.*, which held that where a plaintiff's initial suit was dismissed for failure to prosecute, the plaintiff was barred from relitigating the same issues against the same parties. 520 F.2d 570, 576–77 (7th Cir.1975).[1]

█ Second, in *Thompson v. Northwestern Security Life Insurance Co.*, the Court of Appeals of North Carolina declined to give res judicata effect to an earlier dismissal for failure to prosecute where the initial action was brought by the plaintiff "solely in her official capacity as executrix

---

1. The Restatement (Second) of Judgments provides further support for the proposition that a dismissal for failure to prosecute can provide a valid basis for the application of res judicata to bar a subsequent action by a plaintiff. The comment to section 20 of the Restatement states as follows:

The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judi-

cial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding ...

Restatement (Second) of Judgments § 19 cmt. a (1982).

of the insured's estate," and the second action was brought by the plaintiff solely in her individual capacity, because the plaintiff "could have recovered nothing under the policy in the prior action." 44 N.C.App. 668, 262 S.E.2d 397, 403 (1980). The court in *Thompson* pointed out that in general, a dismissal for failure to prosecute would bar a subsequent action. *Id.* In the instant case, it is undisputed that Plaintiff's suit in this Court alleges the same causes of action against the same Defendants as Plaintiff's suit in the Western District of North Carolina. Thus, under North Carolina law, the dismissal of Plaintiff's suit for failure to prosecute bars Plaintiff's subsequent litigation of the same suit in this Court, and Defendant Cremers' Motion for Summary Judgment is GRANTED.

### 3. Waiver

It is undisputed that Defendant Cremers was unaware of Plaintiff's action in the Western District of North Carolina until early 2004. (Pl. Statement of Genuine Issues at ¶ 24). Plaintiff filed a Notice of Pendency of Other Action or Proceeding, which informed the Court of Plaintiff's action in the North Carolina court, on October 31, 2000. However, since Defendant Cremers had not yet been served in connection with the instant action, Defendant Cremers was not served with the Notice of Pendency of Other Action or Proceeding. Nevertheless, the Notice has been on the Court's docket since November 1, 2000. While it is questionable whether a party can be deemed responsible for knowing the contents of the entire docket, even those items with which he has not been served, an argument could possibly be made that by neglecting to file a motion for summary judgment based on res judicata until November, 2004, Defendant Cremers waived his opportunity to raise the issue.

Res judicata is "an affirmative defense ordinarily lost if not timely raised." *Arizona v. California*, 530 U.S. 392, 410, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000). As such, the Supreme Court has "disapprove[d] the notion that a party may wake up because a 'light finally dawned,' years after the first opportunity to raise a defense, and effectively raise it so long as the party was (through no fault of anyone else) in the dark until its late awakening." *Id.*

"While it is true that res judicata is generally deemed waived if not pled in a timely manner, the Supreme Court has held that sua sponte findings of res judicata might be appropriate in special circumstances." *Maracalin v. U.S.*, 52 Fed. Cl. 736, 740 (Fed.Cl.2002) (considering res judicata issue sua sponte because "[a]dhering to the interests of judicial economy") (citing *Arizona v. California*, 530 U.S. at 413, 120 S.Ct. 2304). *See also Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir.1996) (stating that "courts, in the interest of judicial economy, may raise the issue of preclusion sua sponte even when a party fails to do so") (citations omitted). In addition, the Seventh Circuit in *Kratville* held that the plaintiff "waived the waiver" of the defendant by not asserting the defendant's waiver of its res judicata argument before the district court. *Id.* (citation omitted).

■ Thus, there are several reasons which allow this Court to consider Defendant Cremers' Motion for Summary Judgment on the basis of res judicata despite the fact that the Motion was brought approximately four years after Defendant Cremers was served in this action. Initially, the Court notes that because this case has not proceeded beyond Defendant Cremers' anti-SLAPP motion, Defendant Cremers has not yet filed an answer, in which a defendant would typically plead

affirmative defenses such as res judicata. Further, the action was stayed for nearly three years while Defendant Cremers' appeal was pending before the Ninth Circuit. Indeed, because Defendant Cremers was never served with either the North Carolina suit or Plaintiff's Notice of Pendency of Other Action or Proceeding before this Court, Defendant Cremers' failure to raise res judicata as an affirmative defense was not entirely "through no fault of anyone else" as in *Arizona v. California.* Plaintiff admits that Defendant Cremers was unaware of the North Carolina action until early 2004. (Pl. Statement of Genuine Issues at ¶ 24).

Similarly, since the Court would be justified in considering the issue of res judicata sua sponte, the Court may consider it in the context of Defendant Cremers' Motion. Finally, because Plaintiff failed to raise the issue of waiver in her Opposition to Defendant Cremers' Motion for Summary Judgment, choosing to focus on the application of California law with respect to res judicata, Plaintiff has waived her waiver argument. *See Kratville,* 90 F.3d at 198.[2]

### 4. Due Process / Equitable Concerns

Although the primary focus of Plaintiff's opposition to Defendant Cremers' Motion for Summary Judgment focuses on an application of California choice of law doctrine, in which Plaintiff concludes that California law applies to the Court's determination of whether the Western District of North Carolina's dismissal of Plaintiff's action for failure to prosecute bars Plaintiff's suit before this Court, based on a mischaracterization of the Supreme Court's holding in *Semtek,* Plaintiff also argues that it would be "unfair" to grant Defendant Cremers' Motion for Summary Judgment.

The Supreme Court has held that "[t]here is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'" *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (quoting *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970 (1946)). In *Federated Dep't Stores,* the Court "explained that '[t]he doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case' and rejected any equitable exceptions to the application of res judicata based on 'public policy' or 'simple justice.'" *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 714 (9th Cir.2001) (citing *Federated Dep't Stores, Inc.,* 452 U.S. at 401, 101 S.Ct. 2424). As such, the Court held that there is no "injustice" done by "evenhanded" application of "accepted principles of res judicata," "'[a]nd the mischief that would follow the establishment of precedent for ... disregarding this salutary doctrine against prolonging strife would be greater than the

---

**2.** On February 24, 2005, Plaintiff attempted to file a "Response to Defendant Ton Cremers' Reply Brief Supporting His Motion for Summary Judgment," in which she stated that "Cremers ... has never explained why he first raised the issue of res judicata four years into the case." (Pl. Response at 3). Because Defendant Cremers' Reply did not raise any new issues, the Court declines to accept Plaintiff's "Response." Plaintiff had the opportunity to raise the issue of waiver in her Opposition, but chose instead to rely solely on the choice of law issue. Thus, Plaintiff has waived her waiver argument. Even if the Court accepted Plaintiff's "Response," it does not make any new arguments which support Plaintiff's position, but merely cites authority which is not on point. Further, Plaintiff's waiver of the issue of Defendant Cremers' waiver of res judicata is only one factor in the Court's ruling that the doctrine of waiver does not bar Defendant Cremers' res judicata claim.

benefit which would result from relieving some case of individual hardship.'" *Federated Dep't Stores, Inc.,* 452 U.S. at 401–02, 101 S.Ct. 2424 (citing *Reed v. Allen,* 286 U.S. 191, 198–99, 52 S.Ct. 532, 76 L.Ed. 1054 (1932)).

■ However, the Supreme Court has also held that "extreme applications of the doctrine of res judicata may be inconsistent with a federal right that is 'fundamental in character.'" *Richards v. Jefferson County,* 517 U.S. 793, 797, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (citing *Postal Tel. Cable Co. v. Newport,* 247 U.S. 464, 476, 38 S.Ct. 566, 62 L.Ed. 1215 (1918)). As such, the Supreme Court held that res judicata did not apply to bar an action by plaintiffs who were "mere strangers" to the parties in the underlying case, were not adequately represented in the underlying case, and did not have the opportunity to participate in the underlying case. *Id.* at 802, 116 S.Ct. 1761. Thus, it appears that the Court is not permitted to decline to apply the doctrine of res judicata on equitable or public policy grounds, or grounds of "simple justice," but may only decline to apply the doctrine if the application of res judicata would result in a denial of a federal right, such as due process.

■ It appears that the Supreme Court intended not to apply the doctrine of res judicata where the plaintiff did not have the *opportunity* to litigate in the underlying action. However, in this case, Plaintiff could have avoided dismissal for failure to prosecute simply by serving Defendant Cremers in the North Carolina action. Plaintiff chose not to do so, despite being warned by the North Carolina court that the action would be dismissed if she failed to serve Defendant Cremers. Similarly, Plaintiff chose not to appeal the Western District of North Carolina's dismissal of her case for failure to prosecute.[3] Holding Plaintiff to her free choice not to serve Defendant Cremers despite being warned that such failure would result in a dismissal cannot amount to a denial of due process.

Indeed, Plaintiff's own statements in connection with the instant Motion amount to an admission that Plaintiff's manage-

---

**3.** Plaintiff's fairness argument rests primarily on Plaintiff's assertion that the Western District of North Carolina should not have dismissed her action for failure to prosecute, because such a dismissal is a "drastic remedy to be used only in extreme circumstances." (Pl. Opp. to Def. Motion for Summary Judgment at 13) (citing *Moore's Federal Practice—Civil,* § 41.50[3]; *Morris v. Ocean Sys., Inc.,* 730 F.2d 248, 251–52 (5th Cir.1984)). The Court notes that this Court is not the proper forum for Plaintiff to appeal the Western District of North Carolina's ruling.

Further, even if the Court were permitted to review the merits of the Western District of North Carolina's dismissal of Plaintiff's action for failure to prosecute, there would be ample support for the dismissal. In *Link v. Wabash R.R. Co.,* the Supreme Court upheld the district court's dismissal of a plaintiff's action due to plaintiff's counsel's failure to appear for a pretrial conference. 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). The

Court stated that "[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 630–31, 82 S.Ct. 1386. "It also has the sanction of wide usage among the District Courts." *Id.* at 631, 82 S.Ct. 1386. The Court upheld the dismissal despite the "absence of notice as to the possibility of dismissal [and] the failure to hold an adversary hearing." *Id.* at 632, 82 S.Ct. 1386.

In this case, Plaintiff was given notice that her case would be dismissed for failure to prosecute if she failed to serve Defendant Cremers within sixty days and did not show why service had not been completed. Thus, under the Supreme Court's holding in *Link,* it appears that the Western District of North Carolina's dismissal of Plaintiff's case for failure to prosecute would be upheld.

ment of her two identical, simultaneously-filed cases amounted to forum shopping. Plaintiff stated that one of the reasons she did not serve Defendant Cremers in the North Carolina action was "because it appeared that the California district court was poised to deny Cremers' then-pending motion to dismiss for lack of personal jurisdiction." (Pl. Separate Statement of Genuine Issues at ¶ 24). At the same time, Plaintiff had received an order from the Western District of North Carolina, which informed her that that court "fore[saw] a serious issue of jurisdiction." Thus, it appears that Plaintiff delayed serving Defendant Cremers in the North Carolina action until she had an indication that the motions before this Court were likely to be resolved in her favor, while the North Carolina court did not appear to be as friendly to her claims, at which point she abandoned her action in the "less friendly" forum.

Finally, Plaintiff's argument that it is unfair to bind her to her failure to prosecute in the Western District of North Carolina because she was appearing *pro se* in that action and she is a transactional attorney, not a litigation specialist, is without merit. As a licensed attorney, Plaintiff is charged with familiarity with the Federal Rules of Civil Procedure. Further, Plaintiff had counsel in the action before this Court, and that counsel could have informed Plaintiff of the consequences of failing to prosecute the North Carolina action.

As such, application of res judicata to bar Plaintiff from relitigating her claims in this Court does not violate Plaintiff's due process rights, and Defendant's Motion for Summary Judgment is GRANTED.

## IV. CONCLUSION

Because North Carolina's res judicata doctrine bars Plaintiff from relitigating

this case after the Western District of North Carolina dismissed Plaintiff's identical suit for failure to prosecute, Defendant Cremers' Motion for Summary Judgment [133] is GRANTED. As such, Defendant Cremers' Amended Special Motion to Strike [126] is moot.

IT IS SO ORDERED.